[S. F. No. 4585.    Department Two.—May 28, 1908.]

## V. A. TAPSCOTT, Appellant, v. MEXICAN COLORADO RIVER LAND COMPANY et al., Respondents.

CORPORATION—AGREEMENT TO DIVIDE ENTIRE CAPITAL STOCK IS VOID.— An·agreement upon the part of a corporation to divide its whole capital stock amongst its stockholders, is directly violative of the prohibitions of section 309 of the Code of Civil Procedure, and is null and void. The capital stock referred to in that section is the actual property of the corporation contributed by the share-holders.

ID.—SALE OF ENTIRE PROPERTY—DIVISION OF PROCEEDS AMONG STOCK-HOLDERS.—If a corporation, upon the sale of its entire property, divides the proceeds proportionately amongst some of its stock-holders, the remedy of a stockholder who has not shared in the distribution is to compel the restoration of the funds thus illegally distributed. He cannot maintain an action against the corporation for a proportionate amount of such proceeds.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Gillis & Tapscott, and Jackson Hatch, for Appellant.

J. A. Stephens, and Curtis Hillyer, for Respondents.

HENSHAW, J.—To plaintiff's complaint a general demurrer was sustained with leave to amend. Upon plaintiff's failure

to amend, judgment passed for defendants, and plaintiff prosecutes this appeal. The material averments of his complaint are as follows: That the Mexican Colorado River Land Company, a defendant herein, is a corporation organized and doing business under the laws of the state of California; that its capital stock is forty thousand shares of the par value of fifty cents and that plaintiff is a stockholder, owning about one fifth of the capital stock, and is also a director of the company; that the Mexican Colorado River Land Company (which for convenience will be designated the California corporation), owned lands in the republic of Mexico; that in June, 1902, it executed to Harrison Gray Otis a contract of lease with an option to purchase these lands. By assignment Otis's rights were transferred to a corporation known as the Colorado River Land Company, *Sociedad Anonima* (which for convenience will hereafter be called the Mexican corporation); that the Mexican corporation in due course tendered to the California corporation the purchase money for the lands as agreed upon in the original contract with Otis, amounting to $271,359, and the California corporation in turn accepted the money and executed its deeds to the lands to the Mexican corporation. The complaint then further alleges: "That on the same day and as a part of the same contract" (between the California corporation and Otis) "the stockholders of said corporation, the Mexican Colorado River Land Company, entered into a contract with said Harrison Gray Otis in the words and figures following, to-wit: . . ." This stockholders' contract or agreement with Otis recited, that whereas Otis had leased the lands from the California corporation with the option and privilege of purchasing the same at a stated price, "Now, therefore, if said Otis, his heirs or assigns, should or shall exercise said privilege and buy said property and pay the purchase price as stipulated in said lease and contract, then and in such event we hereby severally agree and bind ourselves, our respective heirs and assigns, to indorse, turn over, and assign without cost and free from all charges and encumbrances, all of the shares of the capital stock of said corporation now belonging to us severally to wit:" (here follows the names of the stockholders with the number of shares respectively owned by them) "and we further covenant and promise that, in addition to

such transfer of stock, we will individually and collectively by resignation of old and election of new directors, turn over to said Otis, his heirs and assigns, all of the machinery and control of said corporation." This paper was signed by the stockholders (amongst them plaintiff), representing a great majority of the stock of the California corporation.. The complaint then alleges that upon receipt of the $271,359 from the Mexican corporation, and upon the execution of the deeds by the California corporation, certain of the members of the board of directors of the California corporation resigned and their places were filled with other directors chosen and serving in the interest of the Mexican corporation in fulfillment of that clause in the stockholders' agreement above quoted whereby "all of the machinery and control" of the California corporation upon the purchase of this land was to be turned over to the purchaser. Plaintiff then, upon information and belief, alleges, and this seems to be the gravamen of his action, that the California corporation, of which he is still apparently a director "has executed and carried out the terms of said contract with all of the holders of the stock of said corporation except this plaintiff, and has paid them their proportionate shares of said sum of $271,-359, and that the said stockholders have severally indorsed, turned over and assigned without cost and free from all charges and encumbrances their said shares of the capital stock of said corporation . . . but that plaintiff has never been requested, nor has any demand been made upon him to do so, nor has any tender been made to him of his proportionate share of the moneys hereinabove referred to based upon his stock and the amount thereof in said" California corporation. It is then averred that the California corporation has no property other than such money as it may have retained, derived from the sales of its Mexican lands as above set forth, and that the corporation contemplates the investment of its funds in other lands, and alleges that "it is the intention of said board of directors to take action in relation to said matter, and to authorize the investment of said funds in properties and enterprises which the president or secretary claim or may claim to have found, being situate in the republic of Mexico, and to thereby remove the said funds from their immediate possession and out of the state of California, and that

they intend, and will in fact, deprive the plaintiff of his proportionate share thereof." Plaintiff, for specific relief on these facts, asks an award to him of the sum of $46,863.25, being his proportionate share of the amount for which the lands were sold. Ancillary to this, he asks that the corporation be restrained from disposing of the funds until this amount so due him be paid.

From even a cursory consideration of this pleading, it is apparent that no legal connection is shown between the California corporation's contract to convey the lands to Otis and the independent stockholders' agreement to make over their stock in the event of such purchase. Whatever may have been the wisdom or unwisdom, the reason or want of reason, which induced the making of this stockholders' agreement, and, notwithstanding the fact that the pleader for his purposes treats this stockholders' agreement as the agreement of the corporation, as when he pleads that the corporation "has executed and carried out the terms of said contract with all the holders of the stock of said corporation except this plaintiff," nevertheless, in law, it is nowhere made to appear that this stockholders' agreement was in any sense, manner, or form binding upon the corporation. Moreover, if by the most liberal construction of this pleading it could be held for the purposes of this demurrer, that this stockholders' agreement did bind the corporation in the sense for which plaintiff contends, then, it must unhesitatingly be said that as to the obligation sought to be cast upon the corporation, this agreement is null and void, because it amounts to an agreement upon the part of the corporation to divide its whole capital stock amongst its stockholders by a method not in conformity with, but in direct violation of, the law. Section 309 of the Civil Code of California, so far as pertinent to this consideration, declares as follows: "The directors of corporations must not make dividends, except from the surplus profits arising from the business thereof; . . . nor must they divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock, . . ." There may, however, be "a division and distribution of the capital stock of any corporation, which remains after the payment of all its debts, upon its dissolution, or the expiration of its term of existence." The capital stock thus referred to is the actual

property of the corporation contributed by the shareholders. (*Excelsior Water & Min. Co.* v. *Pierce,* 90 Cal. 131, [27 Pac. 44]; *Kohl* v. *Lilienthal,* 81 Cal. 378, [20 Pac. 401, 22 Pac. 689]; *Vercoutere* v. *Golden State· L. Co.,* 116 Cal. 411, [48: Pac. 375]; *Schaake* v. *Eagle Can Co.,* 135 Cal. 473, [63: Pac. 1025, 67 Pac. 759].) It appearing that the California. corporation has no property other than the money received from the sales of its Mexican lands, plaintiff's demand, in its essence is, that it shall divide its total capital stock and give him his proportion in violation of the provisions of the· code section above quoted. The fact that he avers on information and belief that the corporation has done this as to· certain of the stockholders affords no reason for his demand that it do so to him. The fact, if it be a fact, that the cor-- poration has acted wrongfully in this matter as to certain· of its stockholders is certainly no reason for asking equity· that it should decree that the corporation should do another· illegal act for plaintiff's benefit. Plaintiff's recourse is to· compel the restoration of ·the funds which he alleges were· thus illegally distributed.

No weight attaches to the allegation in the complaint that the California corporation proposes to reinvest these moneys. in other Mexican lands. The purposes of the organization of the corporation are not in the complaint set forth. All that· can be legitimately derived from the complaint is that the· investment in, transfer, and sales of such lands was one of the· very purposes of its organization.

For these reasons the order sustaining the demurrer was. correct and the judgment appealed from is affirmed.

Lorigan, J., and McFarland, J., concurred.

Hearing in Bank denied.