[S. F. Nos. 8951, 8998. In Bank.—January 27, 1921.]

## TALCOTT LAND COMPANY (a Corporation), Respondent, v. W. A. HERSHISER et al., Appellants.

[1] CORPORATIONS—SALE OF STOCK TO PURCHASER OF ASSETS—CONSENT TO DISTRIBUTION—APPLICABILITY OF AMENDMENT OF SECTION 309, CIVIL CODE.—Where all the stockholders of a corporation sold their stock to the purchaser of the assets of the corporation, who paid for the stock out of such assets, they consented to such distribution of the assets in the sense contemplated by the amendment of 1917 to section 309 of the Civil Code, providing that directors of a corporation shall not be liable for the division of the capital stock among stockholders where all the debts and liabilities of the corporation have been paid and the division is made with the consent of all the stockholders, notwithstanding they each consented separately to take money for their stock and the amount each received was fixed by negotiation and was not a *pro rata* proportion of the capital stock.

[2] ID.—DIVISION OF CAPITAL STOCK AMONG STOCKHOLDERS—EXONERATION OF DIRECTORS FROM LIABILITY—PURPOSE OF CODE AMENDMENT.—The purpose of the amendment of 1917 to section 309 of the Civil Code, exonerating directors of corporations from liability for division of the capital stock among the stockholders where all the debts of the corporation have been paid, was to excuse directors only in the event that the affairs of the corporation had been wound up by the consent of all parties.

[3] ID.—OUTSTANDING OBLIGATION OF CORPORATION TO CONVEY LAND—LIABILITY WITHIN MEANING OF CODE AMENDMENT.—Outstanding obligations of a corporation to convey lands, although assumed by another party, constitute a liability to creditors within the meaning of the amendment of 1917 of section 309 of the Civil Code, exempting directors of corporations from liability for the division of the capital stock among the stockholders where the debts and liabilities of the corporation have been paid.

[4] ID.—UNLAWFUL DISTRIBUTION OF CAPITAL STOCK — INDIVIDUAL LIABILITY OF DIRECTOR.—A director of a corporation is liable under section 309 of the Civil Code for a distribution of the capital of the corporation in violation of law, regardless of whether or not his codirectors shared in the unlawful intent.

[5] ID.—SALE OF STOCK TO PURCHASER OF CORPORATION ASSETS — CHARACTER OF TRANSACTION—VIOLATION OF CODE.—Where all the stockholders of a corporation sold their stock to the purchaser of the assets of the corporation, who paid for the stock out of such assets, and in consummating the transaction the stockholders had the entire assets of the corporation distributed to them in consideration of giving up their stock to one who subsequently resold it to others, there was a transfer of assets to the stockholders in violation of section 309 of the Civil Code.

[6] ID.—DISTRIBUTION OF CAPITAL STOCK BY REAL ESTATE AND WATER CORPORATIONS—AUTHORIZATION PRIOR TO CODE AMENDMENT INAPPLICABLE TO CONVERTED PROPERTY.—Section 309 of the Civil Code as it existed prior to the amendment of 1917, permitting the directors of land and water corporations to divide the land and water rights among the stockholders in proportion to their holdings of stock, did not authorize a real estate corporation, after conversion of its land into personal property, to distribute the personal property to the stockholders.

[7] ID.—UNLAWFUL DISTRIBUTION OF CAPITAL STOCK—LIABILITY TO CORPORATION—WANT OF INJURY TO STOCKHOLDERS IMMATERIAL.—Directors of a corporation are liable to the corporation for an unlawful distribution of the capital stock, regardless of whether or not any stockholder has been injured by the transaction.

[8] ID.—REVIVAL OF DISSOLVED CORPORATION—PAYMENT OF LICENSE TAX—REINSTATEMENT OF CORPORATION.—The revival of a corporation after dissolution for nonpayment of its license tax reinstates the corporation with all its powers, rights, duties, and obligations.

[9] ID.—ACTION FOR RECOVERY OF CAPITAL STOCK—NATURE OF ACTION—ATTACHMENT.—An action by a corporation against its directors to recover the full amount of its capital stock divided in violation

7. Liability of directors to corporation or stockholder for secret profits, note Ann. Cas. 1917A, 238.

of section 309 of the Civil Code is not an action on a contract, express or implied, for the direct payment of money within the meaning of section 537 of the Code of Civil Procedure, authorizing attachments in such cases, the obligation being wholly statutory, if not penal.

APPEALS from a judgment of the Superior Court of Alameda County and from an order taxing costs. William M. Conley, Judge Presiding. Judgment affirmed; order reversed.

The facts are stated in the opinion of the court.

Chapman & Trefethen, M. C. Chapman, Frank J. Solinsky, Peck, Bunker & Cole and James F. Peck for Appellants.

Street & Street, C. M. Delemeter, Henshaw, Black & Goldberg and Thos. R. White for Respondent.

WILBUR, J.—This is an action by the plaintiff corporation to recover from the defendants, its former directors, the amount of its entire capital alleged to have been illegally divided among the stockholders. Plaintiff recovered judgment for the full amount claimed, $122,750, against defendant W. A. Hershiser only, who appeals from the judgment and also from the order taxing costs. Both appeals will be considered together, as the latter appeal involves the costs for levying an attachment, and the ground of objection thereto is that the action is not one on a contract express or implied.

The section of the Civil Code (sec. 309) which prohibits the directors of a corporation from declaring dividends except from surplus profits arising out of the business, and from dividing, withdrawing, or paying to the stockholders, or any of them, any part of the capital stock, authorizes a recovery of the full amount of the capital stock so divided, withdrawn, paid out, or reduced from the directors under whose administration such distribution has occurred. The plaintiff claims that the division, although not made directly, was effected by means of a subterfuge, by which there was substituted for the assets of the corporation a worthless promissory note of one W. M. Martin for $237,623.55, given ostensibly as the purchase price of the corporate assets. The plaintiff corporation was organized in 1908. The appellant W. A. Hershiser was one of the original incorporators. His

father-in-law, Henry F. Greer, was also one of the original
incorporators, having sixty-five thousand shares of the capi-
tal stock. On January 6, 1916, there were outstanding 122,-
750 shares of the capital stock of the plaintiff corporation
of the par value of one dollar per share. The appellant
had purchased the shares of Henry F. Greer for one hun-
dred thousand dollars, executing in payment therefor his
promissory note for the payment of which the shares were
pledged. In December, 1912, H. F. Greer died, bequeathing
the note in question to his daughter, the wife of the de-
fendant, and to her brother, F. A. Greer, both thereupon
becoming directors of the plaintiff corporation. The other
directors were M. T. Minney, the appellant W. A. Hershiser,
Mr. Lowell, and F. A. Greer. In September and October,
1915, M. T. Minney obtained an option to purchase all stock
from all of the stockholders of the plaintiff corporation with
a view of selling the stock to Mr. O'Bear. In connection
with these options, in order to induce the purchaser to take
the stock, it was agreed by some of the stockholders that
they would purchase some of the lots belonging to the plain-
tiff corporation, which was engaged in the business of selling
and subdividing land, for the purposes of sale. The nego-
tiations which were conducted by O'Bear resulted in P. B.
Cross becoming a probable purchaser, but Cross decided that
he would prefer to purchase the assets of the corporation
rather than its stock. Thereupon, the following plan was
devised: The corporation plaintiff entered into a contract
with Cross for the sale to him of the most of the assets of
the corporation for $162,230.66 in cash and certain mortgages
aggregating over thirty-one thousand dollars. This contract,
together with all the remaining assets of the corporation, ex-
cept certain lots, was transferred to W. M. Martin, a brother-
in-law of M. T. Minney, who, in payment therefor executed
his promissory note as above stated. The remaining lots
were transferred to M. T. Minney as commission for making
the sale to Cross. On the same date Martin secured options
to purchase their stock from all the stockholders in the cor-
poration at various amounts fixed in the respective options,
paying therefor with the assets of the corporation turned
over to him in pursuance of the agreement of sale to him in
consideration of his promissory note. Martin paid each
stockholder the amount called for by his respective option

and took an assignment of the stock. By this method the entire assets of the corporation were distributed to the stockholders and in exchange therefor the several stockholders assigned their stock to Martin, who thus became the sole stockholder of the plaintiff, whose sole asset was his own promissory note. The transaction having been completed on February 25, 1916, Martin instructed the Central National Bank to deliver all the shares of capital stock of the plaintiff corporation to M. T. Minney, and, in pursuance of his instructions, one hundred and twenty-two thousand shares of the capital stock were so delivered. No consideration passed from Minney to Martin, but the transfer of the stock was not made until Minney had agreed with the defendant, W. A. Hershiser, to pay certain costs and attorney's fees, amounting to less than five thousand dollars. The state corporation license tax was not paid, and so, on the first Monday in March, 1916, the charter of the plaintiff corporation was forfeited. Immediately thereafter, however, on March 14, 1916, the directors, W. A. Hershiser, Julia M. Hershiser, F. A. Greer, and M. T. Minney, took the necessary steps to reinstate the corporate charter. Thereafter M. T. Minney caused certain other corporations in which he was a large stockholder to convey to the plaintiff corporation, for the nominal sum of ten dollars, two new subdivisions of land known as the Hollywood tract and the Beverly tract. Both these tracts were subject to large mortgages, amounting to about three hundred thousand dollars, and the plaintiff corporation assumed and agreed to pay these mortgages. M. T. Minney placed the one hundred and twenty-two thousand shares of stock upon the market and sold the stock to various purchasers. The new venture proved to be a failure, the corporation lost all its property, and the new stockholders transferred the stock to the present holders, on whose behalf the directors have begun this proceeding. It should be stated in passing that it appears from the evidence, and seems to have been the view of the court, that in the sale of the stock by Minney he informed all the proposed purchasers fully in regard to the distribution of the assets of the corporation and solicited their purchase solely upon the faith of the new venture.

Appellant contends that the distribution prohibited by section 309 of the Civil Code must be by corporate act of the board of directors, and that as the jury in this case found

that two of the directors did not participate in the unlawful intent, there was no corporate act looking to the distribution of the assets to the stockholders, and further contends that there was no distribution of the capital to the stockholders, for the reason that the very scheme of distribution by which the title to the assets of the corporation was vested in the stockholders, called upon the stockholder to surrender his stock in payment therefor. In other words, he ceased to be a stockholder either before or at the time of the distribution to him. In furtherance of this view it is urged by appellant that the proceedings are penal in their nature and that a strict construction should obtain with relation to the application of the law to the facts, and in the interpretation of the law itself. On the other hand, the respondent contends that the law will look to the substance of the transaction, and that the net result of the transaction in question was that the entire assets of the corporation were vested in the stockholders and that the directors and Martin and Minney, in securing the assignment of the stockholders' stock, must be deemed to be their trustees, and that the title really did not pass, but remained in the original stockholders. Of course, if this view were strictly applied, it would follow that the present stockholders have no interest in the stock unless Minney may also be held to have been their agent in the subsequent sale of the stock. During the pendency of this action the attorneys for the defendant appealed to the legislature for relief and succeeded in securing the passage of an amendent to section 309 of the Civil Code, whereby the stockholders of a corporation who had theretofore incurred the liability under the provisions of section 309 would be exonerated in the case mentioned in the proposed amendment. Section 2 of the amendment provided: " . . . The liability of a director of a corporation heretofore incurred shall not exist in any case where, all of the debts and liabilities of the corporation to creditors having been paid, the capital stock divided, withdrawn, or paid out constituted all of the capital stock of the corporation and the same was paid out, withdrawn, or divided with the consent of all the stockholders to or among themselves." (Stats. 1917, pp. 657, 658.) The respondent questions the constitutional authority of the legislature to enact such a statute and also claims that the statute is not applicable by its terms to the

situation here, for the reason that all the debts and liabilities of the corporation were not paid. It is also claimed that the stockholders did not consent to the distribution in the sense contemplated by the statute, for the reason that each consented separately to take money for his stock and the amount he received was fixed by negotiation and was not a *pro rata* proportion of the capital stock of the corporation. Indeed, the contention of the respondent is that this whole scheme was devised in order that the defendant, W. A. Hershiser, might receive a larger proportion of the capital for his stock than was received by the other stockholders. In that regard it should be stated that the option agreements themselves between Martin and the various stockholders recited the purchase by P. B. Cross of the property of the corporation, the transfer of this contract to W. M. Martin, together with all the other assets of the corporation, and recite that Martin is desirous of purchasing the shares of capital stock and making payment for the same from the fund and in the manner and at the time thereinafter provided, namely, when P. B. Cross shall have made full payment and out of said funds. [1] Whatever may be the rights of the stockholders as against the directors, or as against Martin because of the unequal division, it is clear that they consented to the distribution of the assets in the form in which they were distributed, and, consequently, it must be held that the distribution was with the consent of the stockholders. The next question is, Have all the debts and liabilities of the corporation been paid within the meaning of the statute? In this regard it appears that there are now no debts or outstanding obligations of any kind other than the contracts of sale wherein the plaintiff corporation agreed to make title upon payment for some of the lots sold. These contracts were transferred to P. B. Cross together with the land therein agreed to be sold. The purchasers of such lots would be entitled to maintain an action for specific performance against P. B. Cross, the purchaser of the land and assignee of the contract, but it is claimed that there is a liability on behalf of the corporation to pay any damages suffered by reason of the failure of Cross to comply with these contracts if he should fail to do so. Appellant's reply to this contention is that such obligations were not liabilities within the meaning of the statute. [2] Without consider-

ing the respective arguments of counsel upon this proposition, it is clear that the purpose of the legislature was to excuse directors only in the event that the affairs of the corporation had been wound up by the consent of all parties; in other words, only where the parties by agreement had arrived at a conclusion which they could have as well reached by a formal application to the court for dissolution after the payment of the debts and obligations of the corporation. **[3]** We think that the outstanding obligations of the corporation to convey these lands, although assumed by another party, constituted a liability to creditors within the meaning of this law and prevented the application of the saving clause therein to the particular facts. of this case (*Balfour* v. *Garrett,* 14 Cal. App. 261, [111 Pac. 615]; Bouvier's Law Dictionary, 3d Rev. 726). It is unnecessary, therefore, to pass upon the constitutionality of the amendment to section 309 of the Civil Code, as the facts do not bring this case within its terms. It may be observed in passing, however, that the contention of 'the respondent that the law, in so far as it relates to previous transactions, is unconstitutional, is based upon the theory that the obligations of the directors is one on an implied contract, and that a law attempting to modify or destroy this obligation would violate the provisions of the federal constitution against statutes impairing the obligations of contracts. That same contention is also involved in the construction of the law previous to the amendment, as to whether or not it should be strictly construed and also with reference to the propriety of the order of the court granting the plaintiff its costs for levying the attachments. The matter will be considered in connection with those contentions.

Was section 309 of the Civil Code violated by the directors?

**[4]** As to the first point advanced by the appellant that the directors could not offend against the statute with reference to distribution of the corporate assets unless they all joined in the common intent so to do, and that the corporate act of the directors arranging for such distribution was had in pursuance of that common intent. The penalty is imposed upon the directors during whose administration the wrong occurred, and the method by which they can exculpate themselves is by an affirmative entry upon the minutes

of the corporation of their dissent from the act. The argument of the appellant is largely based upon the verdict of the jury whereby they exonerated two of the directors in pursuance of an instruction to the general effect that if these directors acted in good faith, believing that the sale to Martin was what it purported on its face to be, they should be relieved from the statutory liability. The appellant, however, cannot take advantage of an error in favor of his codefendants. The liability is joint and several, and if the defendant is liable, he cannot complain of the verdict in favor of his codefendants who are equally liable. Assuming, for the purpose of deciding this point, that there was a distribution of the capital of the corporation in violation of the law, we have no doubt that the appellant, who brought about the distribution and was a director at the time, was liable under the provisions of section 309 of the Civil Code, whether or not his codirectors shared in his unlawful intent.

[5] In considering the second proposition of the appellant that the transfer was not made to the stockholders, we will also consider the theory of the respondent. Respondent claims that the court should look at the substance of the transaction and thus determine its effect. Viewed in this light, the net result of the transaction was that the stockholders had distributed to them the entire assets of the corporation, and it is claimed that this is as far as the court needs to go in analyzing the whole situation. Martin is characterized as "a dummy, a mere pipe or channel through which the corporate assets passed to the stockholders." All of the difficulties in this case arise from the fact that the stockholders, as a part of the plan of getting the assets of the corporation, gave up their stock, and that Martin, who had received the legal title thereof, subsequently transferred the same to others who transferred it to the present stockholders who have caused this proceeding to be instituted. It must be recognized that this resale of the stock of the corporation at once brings the case within the very mischief sought to be remedied by the law penalizing the directors. If we, for a moment, disregard the fact that in this particular case the stock was sold after a full disclosure of the previous transactions and wholly upon the value of new assets subsequently acquired, and for a moment

assume that the new stockholders were wholly unadvised
of the previous transactions, we would have the condition
where one of the directors (M. T. Minney) had secured the
entire capital stock of the corporation by the method of
selling the stockholders the assets in payment for their stock
and then, by reason of his possession of the stock certificates,
proceeds to sell the same to the public at par. In such a
case it is evident that no greater fraud would be possible
than a fraud by which stock is sold by a director to new
stockholders who purchase it on the faith that the corpora-
tion is a going concern with large assets and, in fact, only
secure a *pro rata* interest in a note given by an insolvent.
If, then, we regard the various transactions from the sale
by the corporation to Cross to and including the transfer
of the stock from Minney to a new group of stockholders
as one entire transaction, it cannot be doubted that such
transaction comes within the purview of the law penalizing
the directors for distributing the assets of a corporation to
its stockholders. If, however, we pause at any point be-
tween these two limits to determine the rights of the par-
ties at such intermediate point, we are met with various diffi-
culties. For illustration, if we assume that the invalidity of
the transaction results from the fact that the note of Mar-
tin was worthless and that he was insolvent, we would have
the situation by which Martin, as the sole stockholder, could
compel the directors to refund the entire capital stock on
the theory that his note was worthless, and thereby make
the note in fact worth par. He could thereupon dissolve the
corporation, thus receiving back his unpaid note and at
the same time the entire capital of the corporation for which
he paid nothing. If we regard Minney as the real mover in
the transaction and Martin as his dummy, we would have a
situation where Minney, one of the alleged co-conspirators
and the owner of the entire capital stock of the corpora-
tion, can cause a suit such as this to be brought by the
corporation against the directors who are therein required
to refund the entire capital stock to the corporation, and
thus Minney, who engineered the scheme, becomes entitled
as the sole stockholder in the corporation to the benefit of
a penalty imposed upon his fellow-directors and co-conspira-
tors. If we regard the capital stock as belonging to Her-
shiser, the appellant, and consider Martin as his dummy or

agent, then we have a case where, as the jury finds (as sole stockholder of the corporation), he is entitled to collect $122,750 of himself, and to the proceeds, less the attorneys' fees necessary to obtain this judgment. If we regard the transfer from the stockholders to Martin as void and the original stockholders as still the owners of the stock, as the respondents claim the fact to be, we find that the corporation now in the control of those who have no title to its stock or its assets is seeking to enforce an obligation in its favor resulting from the contention that they never have gained title to the stock, but that it belongs to the former stockholders. On the other hand, if we look at the transaction as a whole, beginning with the time when Cross agreed to purchase the assets of the corporation and ending at the point where Minney sold all the stock of the corporation, ignoring for the moment the transfer of assets from Minney to the corporation, we see that the corporation has been denuded of all its real assets, its stock has been rendered worthless, and yet has been sold to the public for par. By these transactions the assets of the corporation have been distributed to the stockholders who were in control of the corporation through the defendant directors at the time the plan was formulated. If we consider the contention of the appellant that the distribution was not "to the stockholders" within the meaning of the statute and for a moment leave out of consideration the subsequent assignment to the corporation through the agency of Minney of other assets upon the supposed value of which the new stockholders purchased, we have a situation which was evidently intended to be remedied by section 309 of the Civil Code, before the amendment of 1917, namely, a situation where corporate stock has become valueless by the distribution of the corporation's entire assets and its stock thereafter has been sold upon the market. The wrong sought to be remedied by the statute does not result from the distribution of the capital "to the stockholders as such," but in the depletion of the capital of the corporation, hence it seems clear that the distribution to those stockholders, who alone are represented by the directors, and who at the time of the distribution have the power, by appropriate court or corporate action, to prevent the distribution, and who, instead of preventing such action, receive their proportion of the assets, is clearly within the mean-

ing of the law a distribution to the stockholders themselves, even if in the process of such distribution they transfer their stock to some agent of the corporation in the belief that they are selling the stock. We conclude that the jury were justified in finding that the transfer of the corporate assets came within the prohibition of the law.

[6] There remains another point advanced by appellant based upon the right to distribute the capital stock in certain cases. Before the amendment of 1917 to section 309 of the Civil Code it was permissible under the terms of the section for corporations organized ''for the purpose, among other things, of acquiring, holding, and selling real estate, water, and water rights, . . . with the consent of stockholders representing two-thirds of the capital stock thereof, given at a meeting called for that purpose,'' to ''divide among the stockholders the land, water, or water rights so by such corporation held, in the proportions to which their holdings of such stock at the time of such division entitle them.'' Appellant claims that the plaintiff is a corporation organized for the purposes indicated, and that, as the division of the assets was with the consent of all the stockholders, this was at least equivalent to a called meeting at which two-thirds of the stock should consent to the distribution. That, under this statute, the assets so distributed were necessarily subject to the debts and liabilities of the corporation, as no provision is made either requiring their payment or providing therefor in the event of such distribution. That, in any event, the distribution having conformed to this requirement of the code, with the single exception that there was no called meeting of the stockholders, the consent of all the stockholders being sufficient under the amended law to authorize the distribution, that the effect of this amendment was to waive the requirement for a meeting of the stockholders and thus remit the liability of the directors where the corporation is of the type indicated in the statute for the subdivision of land, etc., although the debts and liabilities were not fully paid. The difficulty with the appellant's contention is that the facts do not bring the transaction within the exception in the law before or after the amendment, as the above provision concerning land and water corporations is omitted from the amendment. Before the amendment, section 309 of the Civil Code permitted the

directors to divide among the stockholders "the land, water, or water rights so by such corporation held, in the propor‑ tions to which their holdings of such stock at the time of such division entitle them. All conveyances made by the corporation in pursuance of this section must be made and received subject to the debts of such corporation existing at the date of the conveyance thereof." Even if it be con‑ ceded that the consent of all the stockholders given to the division of the property of the corporation is equivalent to the consent of two-thirds of the stockholders at a called meeting, a point which we need not decide, it is clear that there is a marked distinction between the distribution of land and water rights among the stockholders of a corporation, subject to the debts thereof, and the distribution of personal property. In the case of real property which remains subject to the debts of the creditors, they are thus fully protected by what is in effect a lien upon the real property in their possession, while in case of the personal property the stock‑ holders could quickly dissipate the funds received and the creditors would be without adequate remedy. The reason‑ able conclusion from these provisions is that it is only where the corporation has land, or water, or water rights, which are mentioned in the section, that the stockholders may avail themselves of this exception. At the time of the transaction here in question the Talcott Land Company had sold all its land, with a few exceptions, and had received therefor the obligations of the vendee, and it was for the purpose of distributing the money and the obligation of the vendee that the transaction was consummated. The ques‑ tion involved here is not whether the Talcott Land Company could have distributed its land to its stockholders and thus come within the proviso mentioned, but whether, having converted its land into personal property, it could distribute this personal property to the stockholders. It is clear that such a division by such a corporation comes within neither the letter nor the spirit of the proviso. For this reason the transaction for the division of the property of the corpora‑ tion is not covered by the exception in section 309 of the Civil Code as it existed prior to the amendment of 1917, and the directors were liable for the penalty fixed in the law at the time of that amendment, and that liability was continued by the terms of the amendment, which remitted

the liability only in the cases mentioned in the amendment where the debts and liabilities to creditors were paid. This view of the law makes it unnecessary to consider the contention of the respondent that the corporations referred to, in the exception in the law previous to the amendment, were only such corporations as dealt in both land and water.

[7] Does the fact that no one has been injured by the transaction exculpate the directors? It has been held that stockholders, even though they have benefited by the distribution of dividends, may force the directors to reimburse the corporation. (*Appleton* v. *American Malting Co.*, 65 N. J. Eq. 375, [54 Atl. 454]; *Loan Society of Philadelphia* v. *Eavenson*, 248 Pa. 407, [94 Atl. 121]; *Kom* v. *Cody Detective Agency*, 76 Wash. 540, [50 L. R. A. (N. S.) 1073, 136 Pac. 1155]; *Stoltz* v. *Scott*, 23 Idaho, 104, [129 Pac. 340].) The reasons which justify the recovery from the directors, whether or not any injury is suffered by the individual stockholders or creditors, would require a similar recovery by the corporation, notwithstanding some or all the new stockholders were aware of the unlawful distribution. The rule must be either that the corporation itself has the right to compel the directors to restore its capital, regardless of whether or not any particular stockholder or creditor has been injured by the distribution, or, on the other hand, that the right to require the directors to replace the capital depends entirely upon whether or not stockholders or creditors have been injured. The cases all seem to hold that the right is in the corporation itself, without regard to the actual injury to stockholders. The statute expressly gives the right of action to the corporation without reference to the wrongs of stockholders or creditors, the latter having a separate right of action. Indeed, if the remedy is punitive, as we have heretofore held (*Irvine* v. *McKeon*, 23 Cal. 472; *Moore* v. *Lent*, 81 Cal. 506, [22 Pac. 875]; *Moss* v. *Smith*, 171 Cal. 777, 785, [155 Pac. 90]), and as was conceded in *Freeman* v. *Glenn Co. Tel. Co.*, ante, p. 508, [194 Pac. 705], it must be held that the right exists in the corporation, regardless of the rights and knowledge of the constantly changing stockholders thereof, otherwise it would be difficult to enforce the penalty as the participating stockholders, or their transferees with notice could not complain of the wrong. The right to compel the restora-

tion of the capital is expressly excepted from the operation of the statute of limitations (Civ. Code, sec. 309), for the purpose, no doubt, of enabling future stockholders, after the lapse of years, to enforce the liability through the corporation, after it had passed from the control of the wrongdoers. To exculpate him, while in this particular case it would seem more just to relieve the defendant from the penalty, would open the door wide for fraud in other cases and would destroy the beneficial effects of the statute.

[8] The district court of appeal, first district, second division, in its decision of this case, reached an opposite conclusion by several processes of reasoning not advanced by the parties. Their view was that upon the reviving of the corporation after its dissolution by operation of law, and the acquisition by that corporation of new assets and the transfer of the stock to new stockholders who were fully advised of the situation and purchased stock wholly in the faith of the new assets, the plaintiff corporation should be regarded as in substance and effect a different corporation, and, therefore, not entitled to enforce the statutory obligation of the old directors to replace its capital. Because we felt this view untenable, we transferred the case to this court for decision. Our view is that the dissolution of the corporation having resulted as a penalty for nonpayment of the license tax, the revival of the corporation by the payment of the tax as authorized by law was intended to fully reinstate the corporation with all its powers, rights, duties, and obligations. The district court of appeal also adopted the view that the transfer by Minney to the revived corporation of the two tracts of land, estimated to be worth more than the capital of the corporation, operated as a payment by Minney, one of the wrongdoers, to the corporation of an amount equivalent to the distributed capital, and that as Minney was jointly and severally liable as one of the directors for the unlawful distribution of the assets, his transfer of such land was to be regarded as a payment by him on behalf of the directors and thus to fully satisfy the obligation. This contention was not presented by the parties and was not pleaded by the defendant, who relied wholly upon the legality of the original transaction. The question of the value of the assets transferred was not litigated, and the only evidence thereof was the statement shown by

Minney to prospective purchasers of stock in which the assets so transferred were estimated to have a value of about twice the capital stock, above the amount of the encumbrances thereon. Subsequently, these assets were lost because of the encumbrances thereon. We need therefore not consider the effect of a *bona fide* payment as no such question is here involved.

[9] The appeal of the defendant from the order taxing costs whereby the defendant was charged with the cost of levying attachment remains to be considered. Appellant's contention is that this is not an action upon a contract, express or implied, for the direct payment of money within the meaning of section 537 of the Code of Civil Procedure, authorizing attachments in such cases only. The argument that the liability is contractual is predicated upon the proposition that the director upon assuming office enters into a contract to perform the duties of his office in a lawful manner, and that his failure so to do is a breach of this implied contract, and for such breach an attachment will lie upon the implied obligation to restore to the corporation the full amount of the capital so diverted. We think it clear that the obligation is wholly statutory if not penal, as we have heretofore pointed out, and is in no sense contractual within the meaning of the attachment law. The unlawful act of the directors is also punished as a misdemeanor by either fine or imprisonment, and it might be argued with equal force upon the same basis that the recovery of the fine would be based upon the contract between the director and the corporation implied by law. In *Walker* v. *McCusker*, 65 Cal. 360, [4 Pac. 206], it was held that an attachment would not lie under section 537, where the action was based upon a statutory liability merely. In that case the purchaser of mortgaged premises brought suit for rent against a tenant in possession for the value of the use and occupation of the land from the day of sale to the making of the deed. The attachment was held unauthorized by section 537 of the Code of Civil Procedure, for the reason that the contract was not express or implied within the meaning of that section. Notwithstanding the difference in facts the language of the court in *Mudge* v. *Steinhart*, 78 Cal. 34, 39, [12 Am. St. Rep. 17, 20 Pac. 147], is directly applicable here. "The existence of a contract, express or implied, is an essential

basis without which no writ of attachment can properly issue, and as in this case the action was founded, not upon contract, but upon the fraud and wrongful acts of the defendant, we are of opinion the writ of attachment issued therein was absolutely void. . . . " It follows that the allowance of these costs was improper.

The judgment is affirmed and order taxing costs reversed.

Lennon, J., Shaw, J., Olney, J., Sloane, J., Angellotti, C. J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.