## HUTTON v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 6638.

Circuit Court of Appeals, Ninth Circuit.

May 31, 1932.

Lloyd W. Dinkelspiel and Heller, Ehrman, White & McAuliffe, all of San Francisco, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, F. Edward Mitchell, and Wm. Cutler Thompson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and John W. Gaskins, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

Petitioner seeks to reverse a decision of the United States Board of Tax Appeals on his petition for review of the action of the Commissioner of Internal Revenue assessing him as transferee of the C. A. Hutton Flour

*Rehearing denied August 1, 1932.

Company, Inc., for income and profit taxes for the calendar years 1919 and 1920, amounting to $6,428.76 for the year 1919 and $1,454.48 for the year 1920. The Board of Tax Appeals affirmed the Commissioner. The facts upon which the decision of the Board of Tax Appeals rests are either stipulated or admitted in the pleadings. From such stipulation and admission it appears that the taxpayer was the sole owner of the C. A. Hutton Flour Company from the time of its organization up to the time of its liquidation; that it was incorporated in 1908, and engaged in the business of buying and selling flour until 1920; that the corporation was dissolved and liquidated in 1921; that the liquidation of the company resulted from heavy losses sustained by it in postwar readjustments which were accompanied by declines in market and inventory values and the collapse of the business of many of the company's debtors, resulting in heavy losses in accounts and bills receivable; that the liquidation was accomplished by realizing on all sound assets and by some of the largest merchandise creditors accepting as credits some of the corporation's questionable bills receivable, bearing the personal endorsement and guaranty of the petitioner, some of which are still outstanding and unpaid; that upon the liquidation of the company the petitioner received the sum of $72,000 from said company; that subsequent to such receipt by him of said amount he paid certain outstanding obligations of the company, which payments exceeded the said sum of $72,000 so received by him.

At the conclusion of the presentation of the stipulation of facts to the Board of Tax Appeals a colloquy occurred between a member of the Board and counsel representing the respective parties which is of significance on this review solely for the reason that the petitioner contends that the Commissioner thereby, in effect, stipulated that the sole question involved in the case was whether or not there was a lien in favor of the government upon the $72,000 received by the taxpayer from the C. A. Hutton Flour Company. The matter arose as follows:

"The Member. Well, if I remember correctly, and understand it correctly, in the liquidation and distribution of the assets of this corporation, the petitioner here got about $72,000.

"Mr. Wilson. That is admitted, yes, sir.

"The Member. It is also stipulated and admitted that he paid out subsequent to that receipt amounts of outstanding liabilities of the corporation in excess of $72,000.

"Mr. Wilson. That is correct.

"The Member. Well, then, why shouldn't judgment be rendered for the petitioner on that statement of facts? He is not really a distributee rendering him liable, is he?

"Mr. Wilson. The only point on which the Commissioner contends, your Honor, is that the Government takes the position that the petitioner received the sum of $72,000 on the liquidation of the C. A. Hutton Flour Company; that the amount of income taxes heretofore duly assessed against the company became a lien prior to any of its general creditors against the company. If the Commissioner is mistaken in that contention, then I will say that the petitioner is entitled to judgment. That is the sole ground upon which the Commissioner stands in this case.

"The Member. Then it really becomes a question of law as to whether or not a lien did attach by reason of this assessment, and second whether or not that lien takes precedence of the preferred creditors.

"Mr. Dinkelspiel. That is the first question of law, and of course, there is the additional contention and the further question that is raised. We realize that it has been decided adversely several times by the Board, but nevertheless has been sustained by the District Court, namely, the constitutionality of the procedure under section 280 of the Revenue Act of 1926.

"The Member. Has the Board ever passed directly upon the question of whether or not this assessment fixes a lien that gives a preference to the Government?

"Mr. Dinkelspiel. I do not believe so. I have been unable to find a decision, and I would like to ask Mr. Wilson whether he has been able to find such a decision.

"Mr. Wilson. I am unaware of such a decision upon that point."

Petitioner contends that, inasmuch as there is no such thing as a lien under the circumstances, the Board of Tax Appeals should have confined its consideration to that issue, and that, not having done so, this court should reverse the action of the Board. It is sufficient to say that the contention of the Commissioner here, and no doubt before the Board of Tax Appeals as well, is that the government had priority over the general creditors of the company by reason of the provisions of sections 3466, 3467 of the Revised Statutes (31 USCA §§ 191, 192). Whether or not that priority resulted in a lien in the strict sense of the term is entirely immaterial. Nor do we think the impromptu statement of counsel for the Commissioner before the Board of Tax Appeals did or should limit the Board in considering the stipulated facts to determine therefrom whether or not the taxpayer was liable for the tax. For that reason, we proceed to consider the matter upon its merits.

The stipulation of facts leaves much to be desired and many questions unanswered. Each party contends he should prevail in view of these uncertainties and of the burden of proof thereon. Before considering that controversy, some of the deficiencies in the stipulation should be noted. The manner of the dissolution of the corporation is not stated. The date thereof is not fixed, except that it is stipulated that it occurred during the year 1921. Neither is the date of the payment of the sum of $72,000 by the corporation to its sole stockholder fixed. Whether it was paid before, upon, or after dissolution is not stated; nor is it shown in what manner or by whom said payment was authorized to be made to the stockholder. It is not shown when or to whom the taxpayer paid said sum upon "certain outstanding obligations of the C. A. Hutton Flour Company." Nor is it shown whether or not the petitioner as sole stockholder was a director or manager of the corporation, although it is clearly inferable that he was because a director must be a stockholder, and he was the sole stockholder. Petitioner states: "It is important to note that there is absolutely no evidence or stipulation as to the nature of the obligations paid, as to whether they were obligations of mortgage creditors, judgment creditors, preferred creditors or others, nor is there anything in the record which would support the holding that the petitioner had any notice at the time of the receipt by him of the sum of $72,000 or at the time of the distribution thereof by him of this sum in liquidation of the corporation's debts, of any claim for taxes by the Government. There is, moreover, nothing in the record as to the filing of any lien claim by the government."

And the respondent points out that: "There is not a word in the agreed statement of facts or the findings of the Board to show that the respondent was required to pay these obligations; that he ever assumed to pay said obligations, much less that he received the $72,000 impressed with a trust to pay them; that he received said sum in a representative capacity, or as the agent of the taxpayer corporation; nor is there anything to indicate the character or extent of the obligations which were paid. Whether they were

secured or unsecured, or whether they consisted in whole or in part of obligations upon which petitioner was liable are all matters which are left to conjecture."

It is well to remember in dealing with the facts that the corporation was the alter ego of the "sole stockholder," and that he was a director thereof. The law of California at the time of the dissolution of the corporation prohibited the distribution of the capital of a corporation to the stockholders until its debts were all paid. Section 309 of the Civil Code of California, as amended in 1917 (St. Cal. 1917, p. 657), provided:

"Unless they shall have been first permitted or authorized so to do by the commissioner of corporations, directors of corporations [1] must not make dividends except from the surplus profits arising from the business thereof; * * * [3] nor must they divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock, except as hereinafter provided. * * *

"For a violation of the provisions of this section, the directors under whose administration the same may have happened * * * are, in their individual or private capacity, jointly and severally liable to the corporation, and to the creditors thereof, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced or debt contracted. Nothing herein prohibits a division and distribution of the capital stock of any corporation which remains after the payment of all its debts, upon its dissolution, or the expiration of its term of existence."

Section 560 of the Penal Code of California, in force at the time of the dissolution of this corporation, made it a misdemeanor for a director of a corporation "to divide, withdraw, or in any manner, except as provided by law, pay to the stockholders, or any of them, any part of the capital stock of the corporation."

By section 400 of the Civil Code of California, it is provided that: "Unless other persons are appointed by the court, the directors or managers of the affairs of a corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full powers to settle the affairs of the corporation, collect and pay outstanding debts, sell the assets thereof in such manner as the court shall direct, and distribute the proceeds of such sales and all other assets to the stockholders. Such trustees shall have authority to sue for and recover the debts and property of the corporation, and shall be jointly and severally personally liable to its creditors and stockholders or members, to the extent of its property and effects that shall come into their hands. * * * "

In Hedges v. Frink, 174 Cal. 552, 163 P. 884, 885, the Supreme Court of California had occasion to consider distribution of some of the assets of a corporation to one of its stockholders, under a situation somewhat similar to that involved in the case at bar. In dealing with that situation, the court stated: "The language of our law and of our decisions permits of no doubt but that this attempted method of distributing a portion of the capital stock of the corporation was illegal and void. Section 309 of the Civil Code forbids it. Section 560 of the Penal Code condemns it as criminal. Such an act of distribution is not permitted, whether attempted by the directors, the stockholders, or both. Kohl v. Lilienthal, 81 Cal. 378, 385, 6 L. R. A. 520, 20 P. 401, 22 P. 689; Kreamer v. Earl, 91 Cal. 112, 27 P. 735; Tapscott v. Mexican, Colorado, etc., Co., 153 Cal. 664, 667, 96 P. 271; Burne v. Lee, 156 Cal. 221, 228, 104 P. 438."

In Talcott Land Co. v. Hershiser, 184 Cal. 748, 755, 195 P. 653, 656, referring to the amendment, above quoted, to section 309 of the Civil Code of California, as adopted in 1917 (St. Cal. 1917, p. 657), it was said: " * * * It is clear that the purpose of the Legislature was to excuse directors only in the event that the affairs of the corporation had been wound up by the consent of all parties; in other words, only where the parties by agreement had arrived at a conclusion which they could have as well reached by a formal application to the court for dissolution after the payment of the debts and obligations of the corporation. We think that the outstanding obligations of the corporation to convey these lands, although assumed by another party, constituted a liability to creditors within the meaning of this law and prevented the application of the saving clause therein to the particular facts of this case. Balfour & Garrette v. Worley, 14 Cal. App. 261, 111 P. 615; Bouvier, Law Dict. 3 Rev. 726." See our decision in McPherson v. Com'r of Internal Revenue, 54 F.(2d) 751, for a discussion of the powers of trustees of a dissolved corporation under the California law.

In view of the foregoing statutes of California and decisions interpreting the same, it seems clear that the petitioner, having received $72,000 of the capital of the corporation, is liable to return that amount to the

corporation, regardless of the fact that he may have applied the amount to debts of the corporation. Talcott Land Co. v. Hershiser, supra. However that may be, it is stipulated that the C. A. Hutton Flour Company, while insolvent, transferred all its assets to its sole stockholder, while it was obligated to the government for income taxes, which, although not yet formally ascertained, were nevertheless an accrued obligation. Hatch v. Morosco Holding Co. (C. C. A.) 50 F.(2d) 138; Updike v. U. S. (C. C. A.) 8 F.(2d) 913.

In Pann v. United States (C. C. A.) 44 F.(2d) 321, 322, we sustained a judgment of the District Court in favor of the government and against the transferees of the property of a dissolved corporation, which by the distribution of its property had been left without assets. Speaking of one of the stockholders, we said: "He alleges that the corporation has dissolved and he has possession of and claims as his own all the assets of the corporation. Under these circumstances it is well established that the appellant was liable for the tax upon the corporate income where the property received by him is in excess of that tax. United States v. Garbutt (C. C. A.) 35 F.(2d) 924, and cases therein cited; Updike v. United States (C. C. A.) 8 F.(2d) 913. This right is assumed, if not decided, in United States v. Updike, 281 U. S. 489, 50 S. Ct. 367, 74 L. Ed. 984, and Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255." This view is in accord with the decision of the Circuit Court of Appeals for the Second Circuit in Hatch v. Morosco Holding Co., supra, 50 F.(2d) 138, 139: "Although the additional taxes were not assessed against the theatre company until 1925, the obligation to pay them existed from the time the taxes for 1919 and 1920, respectively, accrued. Heyward v. United States, 2 F.(2d) 467 (C. C. A. 5); section 250, Revenue Act of 1918 (40 Stat. 1082). Hence the United States was a creditor of the theatre company during the entire period of the holding company's occupation of the leased premises. When the assets of a corporation are distributed to its shareholders leaving corporate debts unpaid, liability of the shareholders to a creditor, to the extent of the value of the assets received is beyond question. McWilliams v. Excelsior Coal Co., 298 F. 884 (C. C. A. 8); Capps Mfg. Co. v. U. S., 15 F.(2d) 528 (C. C. A. 5); Angle v. Chicago, St. Paul, etc., Ry. Co., 151 U. S. 1, 15, 14 S. Ct. 240, 38 L. Ed. 55; Curran v. Arkansas, 15 How. 304, 14 L. Ed. 705; Wood v. Dummer, Fed. Cas. No. 17,944 [3 Mason, 308]; Updike v. U. S., 8 F.(2d) 913 (C. C. A. 8); United States v. McHatton, 266 F. 602 (D. C. Mont.)." See, also, Phillips v. Commissioner, 283 U. S. 589, 605, 51 S. Ct. 608, 75 L. Ed. 1289; United States v. Garfunkel (D. C.) 52 F.(2d) 727; United States v. Armstrong (C. C. A.) 26 F.(2d) 227.

The Commissioner having established the government's claim against an insolvent and dissolved corporation which has transferred all its assets, and having traced sufficient thereof to pay the tax into the hands of the stockholder and director, has thereby established its right to recover its tax from the stockholder, and the Commissioner has maintained the burden of proof imposed upon him by section 912 of the Revenue Act of 1924 as added by section 602 of 1928 (45 Stat. 873, 26 USCA § 1229), see Willard v. Dobbins, 191 Cal. 287, 216 P. 1008; and if, by reason of other facts, that right is terminated, the burden is upon the stockholder to show that fact. The petitioner claims that the fact that he has paid out the money he received from the corporation to its creditors required the Commissioner to adduce evidence that the claims he paid did not have priority over that of the government. We know of no rule by which a stockholder of a corporation who has received the assets of a corporation paid to him without legal authority can resist payment on behalf of the corporation or of its creditors because of the fact that he has paid the money out to creditors of the corporation. The mere fact that the transferee has paid the money out on the debts of the corporation without further evidence does not relieve the transferee. He had no right to the capital of the corporation until all its debts were paid. Talcott Land Co. v. Hershiser, supra.

Order affirmed.