[L. A. No. 10957. In Bank.—January 30, 1931.]

FRED E. PETERSON et al., Appellants, v. W. F. BALL et al., Respondents.

Hugh M. Foster for Appellants.

Overton, Lyman & Plumb, Lawler & Degnan and Barry Brannen for Respondents.

Brobeck, Phleger & Harrison, Winfield Dorn, Arthur L. Shannon, Anderson & Anderson & Sheahan, Call & Murphy, George W. Fenimore, Chandler, Wright & Ward and Chandler P. Ward, as *Amici Curiae.*

THE COURT.—Both appellants and respondents being desirous that a rehearing be granted in this case, appellants questioning the correctness of the decision in holding that the cause of action was brought to recover a penalty, and hence was not assignable, and respondents questioning the correctness of the conclusion that the action was saved from abatement by the general provision of section 404 of the Civil Code, and *amici curiae,* joining with respondents in a petition to grant a rehearing, a rehearing was granted in order that further consideration might be given to the respective contentions of the parties. After a thorough reexamination of the questions presented, assisted by the additional authorities supplied by both appellants, respondents and *amici curiae,* we are convinced that the conclusions

reached in our former opinion are correct and, therefore, adopt it as the opinion in this case.

. "This action was brought by plaintiffs as trustees by assignment for the benefit of creditors of the Bartlett Music Company, against the defendants as directors of said company, based·upon the provisions of section 309 of the Civil Code making directors jointly and severally liable for the full amount of debts created in excess of the subscribed capital stock of the corporation during their administration. The complaint consisted of ten counts, each count of which alleged that the defendants were directors of the Bartlett Music Company, a corporation, and as such directors created an indebtedness in a certain amount which was in excess of the subscribed captial stock. At the trial the defendants moved for judgment on the pleadings which motion was granted by the court, and judgment was entered for the defendants. From this judgment plaintiffs have appealed.

"After the rendition of judgment and the filing of notice of appeal by plaintiffs, section 309 of the Civil Code was amended. (Stats. 1929, p. 1266.) By said amendment the liability on the part of the directors of a corporation for the creation of debts in excess of subscribed capital stock was completely eliminated therefrom. Defendants, thereupon, filed their motion to dismiss the appeal upon the ground that as the liability of directors under this section was penal and statutory in character, the amendment operated to abate all proceedings pending thereunder. This motion was argued and submitted with the understanding that it would be considered and passed upon at the time of the determination of the case upon its merits. We will first direct our attention to the motion to dismiss.

"The case of *Moss* v. *Smith*, 171 Cal. 777 [155 Pac. 90], involves a very similar question. In that case the court held, Justice Henshaw writing the opinion, that the Public Utilities Act (Stats. Ex. Sess. 1911, p. 18), repealed section 309 of the Civil Code in so far as it had application to directors of public utility corporations and that as the Public Utilities Act contained no clause saving pending litigation or imperfect or inchoate rights the effect of the repeal was to destroy the right of a creditor to further prosecute a pending action to enforce the liability of the directors

under section 309 of the Civil Code for such excess indebtedness. This case is quoted with approval in *Freeman* v. *Glenn County Tel. Co.,* 184 Cal. 508 [194 Pac. 705], which involved the question of whether or not the amendment of 1917 to section 309 of the Civil Code operated to cut off the right to enforce the liability of directors under that section for the distribution of the captial stock of the corporation in contravention of the provisions of section 309 prior to 1917. The court in that case, relying upon the authority of *Moss* v. *Smith, supra,* held that the amendment operated as a repeal of the statutory liability formerly existing with the result that the repeal operated to destroy the right of action if it occurred at any time prior to final judgment.

"An order dismissing the appeal based upon the authority of these two cases, therefore, might well be made, were it not for the fact that there appears to be a general saving clause of actions involving corporations incorporated in the part of the Civil Code dealing with corporations. This is section 404 of the Civil Code, which provides that 'The legislature may at any time amend or repeal this part, or any title, chapter, article, or section thereof, and dissolve all corporations created thereunder; but such amendment or repeal does not, nor does the dissolution of any such corporation, take away or impair any remedy given against such corporation, its stockholders or officers, for any liability which has been previously incurred.'

"This section has been in the code since 1905 and was, therefore, in the code at the time of the decision of *Moss* v. *Smith,* in 1916, and *Freeman* v. *Glenn County Tel. Co.* in 1920. Respondents argue that inasmuch as that section did not control in those two cases it should not control here. The records show, however, that this section was not drawn to the attention of the court in either of these actions. However, had the section been drawn to the attention of the court, it is quite probable that the same result would have been reached in the two cases for the reason that in each case there were present other and controlling factors not present in the instant case. For instance, in *Moss* v. *Smith,* it was held by the court that the Public Utilities Act absolutely governed and controlled, as the corporation therein

involved was a public utility corporation. Inasmuch as the Public Utilities Act, which, as the courts held, contained no clause saving pending litigation, was the sole controlling statute, it follows that section 404 would have no application. In the case of *Freeman* v. *Glenn County Tel. Co.* the peculiar phrasing of the saving clause of section 309, as amended in 1917, which expressly excluded from the effects of the saving clause the particular liability of directors upon which that action was based, excluded section 404 from application to that act. Subdivision 2 of section 309, as amended in 1917, reads as follows: 'No right, cause of action, or liability now existing or any action or proceedings now pending, shall be affected by this act and such right, cause of action or liability may be enforced and such action or proceeding may be prosecuted in the same manner and with the same effect as if this act had not been passed; excepting only the liability of a director of a corporation *heretofore incurred* shall not exist in any case where all of the debts and liabilities of the corporation to creditors having been paid, the capital stock divided, withdrawn, or paid out constituted all of the capital stock of the corporation and the same was paid out, withdrawn, or divided with the consent of all the stockholders to or among themselves.' It is obvious that this is a special provision governing 'liabilities heretofore incurred' under special conditions such as existed in that case, and that, therefore, the general provisions of section 404 were not applicable.

"We find no merit in defendants' contention that section 404 is a general provision and that inasmuch as the 1929 legislature expressly deleted from section 309, as it existed in 1917, the clause saving pending litigation, it affirmatively expressed its intention that pending litigation should be abated. The legislature in 1929 made drastic and far-reaching changes in title I of part IV of division I of the Civil Code, which deals with corporations in general. Some thirty-six sections were amended, twenty-one sections repealed and five new sections added to this particular division of the code. In our opinion, it appears reasonable that in the reframing of the code applicable to corporations, the superfluity of the saving clause in section 309 was noted and the legislature deeming it no longer necessary, entirely

eliminated it. No other explanation appears to us plausible in view of the provisions of section 283 of the Civil Code, as amended in 1929, which provides that 'The provisions of this title are applicable to every private corporation, unless there be a special provision in relation thereto inconsistent with some provisions of this title, in which case the special provision prevails.'

"The motion for a dismissal is, therefore, denied.

"The trial court based its order granting judgment on the pleadings in favor of the defendants upon two propositions of law. First: The liability of directors created by section 309 of the Civil Code for creating debts beyond the subscribed capital stock of the corporation is penal in character, and second: a right of action to enforce this liability is not assignable. If these two propositions are well founded in law, then plaintiffs' complaint failed to state facts sufficient to constitute a cause of action against the defendants, and the motion for judgment on the pleadings in favor of the defendants was properly granted.

"Section 309 of the Civil Code was before this court in the case of *Moss* v. *Smith*, 171 Cal. 777 [155 Pac. 90]. In that case, after an exhaustive review of the authorities not only in this state but in other jurisdictions, this court concludes (p. 786), 'in all of these jurisdictions it is held that a creditors' bill is the proper method to establish rights under like statutes, and in all of them the statutes themselves are declared to be penal in their nature. Indeed, the whole matter may be summed up in the statement that even if section 309 be remedial so far as the creditor is concerned, it is highly punitive so far as the directors are concerned.' The case of *Moss* v. *Smith* followed *Irvine* v. *McKeon*, 23 Cal. 472, and *Moore* v. *Lent*, 81 Cal. 502 [22 Pac. 875], and in turn has been followed by this court in *Talcott Land Co.* v. *Hershiser*, 184 Cal. 748, 761 [195 Pac. 653]. In the state of Montana, where section 309 of the Civil Code of this state has been adopted without change by the legislature as section 3837 of the Revised Codes of 1907, it was held in the case of *Continental Oil Co.* v. *Montana Concrete Co.*, 63 Mont. 223 [207 Pac. 116, 117], 'that the liability imposed by section 3837 is purely statutory and is in the nature of a penalty for failure to obey the mandate

of the law, and this is in harmony with the decided weight of authority'. (Citing *Moss* v. *Smith, supra,* and many other authorities.) While the case from the Supreme Court of Montana states that the above rule is in harmony with the weight of authority, we have not been cited to a single authority supporting a contrary rule. We conclude, therefore, that the liability imposed by section 309 against directors who have suffered debts to be created in excess of the subscribed capital stock of the corporation, and which is the basis of the cause of action set out in plaintiffs' complaint is 'highly punitive so far as the directors are concerned'.

"The next question with which we are concerned is whether a claim or cause of action arising out of said section 309 in favor of the corporation or in favor of the creditors against the directors is assignable. The only authority under which the plaintiffs claim the right to institute this action against the defendants is under the assignment made to them by the corporation, the Bartlett Music Company. This assignment is not a statutory assignment for the benefit of creditors for which the Civil Code provides (sec. 3449), but is one which was executed by the Bartlett Music Company, as party of the first part, to five persons designated as trustees and as parties of the second part, and a number of the creditors of said corporation referred to therein as parties of the third part, and who assented in writing to said assignment. By this assignment, the corporation assigned to said trustees, 'all of its property of every kind and nature, wherever situated, both real and personal, including all that stock of merchandise, store furniture and fixtures, book accounts, books, bills receivable, cash in hand, choses in action, insurance policies, and all other personal property of every kind and nature situated in or pertaining to, the stores now owned and conducted by said party of the first part in the City of Los Angeles, California, including any leases and leasehold interest'.

"The trustees named in said assignment are the plaintiffs herein with the exception of C. W. Jacks and W. C. Lannin, who were selected to take the places of C. H. Mayer and W. H. Munson, named in said assignment as two of said trustees, but who subsequently and before the commencement

of this action resigned. It will thus be seen that the plaintiffs take whatever rights they have in the property of the Barlett Music Co. by a voluntary assignment executed in their favor by the corporation and assented to by certain of the creditors. That such an assignment is binding upon the corporation and the creditors assenting thereto is not questioned. (*Jarvis* v. *Webber*, 196 Cal. 86 [236 Pac. 138].) By this assignment, and as to the corporation and the creditors whose consent was given thereto, the plaintiffs took and thereafter held under the terms of said written assignment, all property of the corporation, which the latter could transfer or assign. ▆▆ We cannot agree with the contention of the defendants that the assignment is not broad enough to cover causes of action. By reference to the language of the assignment, it will be noted that it purports to assign 'all property of every kind and nature' belonging to the corporation, including 'choses in action'. This latter term is sufficiently comprehensive to cover causes of action.

"This brings us to the question as to whether the right of action against the directors for creating debts in excess of the subscribed capital stock of the corporation is assignable. If it is, then the plaintiffs acquired such right and may maintain this action for the purpose of enforcing it against the directors. If it is not assignable then as already indicated this action must fail.

"In a recent case before this court we held that the right given by the Usury Act to recover treble interest paid on a usurious note or obligation was not assignable. (*Esposti* v. *Rivers Bros. Inc. et al.*, 207 Cal. 570 [279 Pac. 423].) In that case we said, 'The second answer is that the right which the original maker of a usurious note and mortgage is given under section 3 of the Usury Act to recover such interest and to treble the same is in the nature of a statutory penalty and under the authorities from other jurisdictions, which we hereby approve is not assignable. In the case of *Pardoe* v. *Iowa State Bank*, 106 Iowa, 345 [76 N. W. 800], a statute containing the same language as that of the usury law of this state was so construed with a quite abundant reference to authorities. A similar ruling was made by the supreme court of Kansas upon the terms of a similar statute in the case of *Lloyd* v. *First Nat. Bank*, 5 Kan. App. 512 [47

Pac. 575]. (See, also, *Robinson* v. *St. Maries Lumber Co.,* 34 Idaho, 707 [204 Pac. 671] ; 21 R. C. L., p. 211, sec. 6; Ann. Cas. 1916D, 886, 893, and notes; *Allen* v. *Petty,* 58 S. C. 240 [36 S. E. 586] ; *First State Bank, etc.,* v. *Bank of Jefferson,* 112 Okl. 177 [240 Pac. 311].)'

"In *Wilson* v. *Shrader,* 73 W. Va. 105 [Ann. Cas. 1916D, 886, 79 S. E. 1083, 1084], the court phrased the question presented on appeal as follows: 'if the rights of action for the penalty are not assignable, the declarations are wholly and essentially bad. They set forth no causes of action, the benefit of which the assignee can take. A vital inquiry, therefore, is whether penalties under the statute here involved are assignable.' The action of *Wilson* v. *Shrader, supra,* was instituted for the recovery of a penalty given by section 7 of chapter 79 of the code of West Virginia against a coterminous land owner for mining coal within five feet of the land of the adjacent owner without his consent in writing. The statute provided for a forfeiture or penalty of $500 in favor of the adjacent owner for each violation of said statute. The declarations set forth three separate and distinct violations of the statute and judgment was asked for $1,500 based upon the facts so alleged. At the time of the alleged violations, one Samuel V. Woods was the owner of the adjacent estate. Before the commencement of the action, he sold the same to the plaintiff and in his deed to the plaintiff he endeavored to assign his right to recover the amount of the three penalties given under said statute. The opinion of the supreme court of West Virginia contains a most thorough citation of authorities upon the question of the assignability of rights of action based upon statutory penalties, and concludes that rights so given by statutes cannot be assigned. The court in that case points out (79 S. E. 1086) that 'the reasons that preclude the assignability of mere personal rights, such as actions for slander, assault and battery and other pure torts, obviously apply here. Assignability of such claims encourages litigation and strife. The same principle of public policy forbids the conversion of penalties into commodities or assets.'

"The only answer the plaintiffs make to the contention of the defendants, which appears to be well supported by

the authorities .just cited, is that the assignment made to them by the corporation and assented to by certain of the creditors, is as valid and binding as if made in compliance with the provisions of sections 3449 to 3473 of the Civil Code, and that such an assignment is valid against the assignor and all creditors assenting to it and serves to vest the assignor's title to all the property absolutely in the assignee, which title can be voided only by a creditor not having assented to the assignment or by a purchaser or encumbrancer in good faith and for value. We may concede that the assignment made by the Bartlett Music Company to the five persons therein named as trustees is as valid and has the same legal effect as an assignment for the benefit of creditors made under the provisions of sections 3449 to 3473 of the Civil Code. In either case, the assignee takes only such property of the assignor as the latter may legally convey or assign. We have pointed out that the right of the corporation to sue the directors for creating debts in excess of the subscribed capital stock is not assignable. Therefore, under the assignment the plaintiffs have no standing in the action.

■ "Appellants make the further contention, however; that the appellants as trustees under such assignment for the benefit of creditors occupy a dual position. They not only succeed to all of the property of the corporation by virtue of the assignment, but they represent and stand in the shoes of the creditors as well, and in this latter capacity they are authorized to maintain this action on behalf of the creditors to recover from the directors upon their liability under section 309 of the Civil Code. It will be noted under the provisions of this code section as they were previous to the amendment of said section in 1929, that the directors assenting to an excessive indebtedness are made 'jointly and severally liable to the corporation and to the creditors thereof', etc. There is undoubtedly a dual liability created by this section of the code against the directors, one in behalf of the corporation, and the other in behalf of the creditors. If we understand appellants' position, it is that if they are not able to maintain this action to recover on behalf of the corporation by virtue of said assignment, they are, at least, entitled to institute and prosecute the same to

judgment as representative of the creditors under the terms of said section of the code making the directors liable to the creditors as well as to the corporation. Unfortunately for the appellants, this court has on two occasions held that the assignee even under a statutory assignment for the benefit of creditors 'is merely the representative of his assignor and does not represent the creditor'. (*Francisco* v. *Aguirre,* 94 Cal. 180, 182 [29 Pac. 495]; *First Nat. Bank* v. *Menke,* 128 Cal. 103, 106 [60 Pac. 675].) These cases further hold that an assignee for the benefit of creditors under a statutory assignment from his assignor is not a person upon whom the estate of the assignor devolves by operation of law, but that he takes title to whatever estate he possesses by the voluntary act of the previous owner. In other words the assignee holds solely under the assignment made by the assignor for the benefit of his creditors. We do not think it can be successfully contended that the appellants, who are made trustees under a nonstatutory assignment, are possessed of any greater powers, or stand in any more favorable position regarding the property of the assignor, than an assignee under a statutory assignment. The latter has some semblance of reason for contending that he holds his position and exercises the powers of his office under a procedure provided by law, while the former has not. His rights depend entirely upon the voluntary acts of the persons who are parties to the assignment.

"The appellants appear to lay great stress upon the case of *Herner* v. *Henning,* 93 U. S. 228 [23 L. Ed. 879, see, also, Rose's U. S. Notes]. In this case the court had under consideration the Act of Congress of May 5, 1870 (16 Stats. at Large, 98), one of the provisions of which made the trustees or directors of any corporation organized under the act liable to the creditors for corporate debts created in excess of the capital stock. The court in that case held that an action at law by an individual creditor to recover the amount due him would not lie against the directors, but that the liability of the directors represented a trust fund for the benefit of all the creditors of the corporation so far as it might be necessary to pay their debts. It is pointed out in that case that while the action as brought could not be maintained, the proper proceeding

would be one brought in equity by all of the creditors, or by one or more in behalf of all, for the purpose of subjecting this trust fund to the payment of all of the creditors in proportion to the amount of their debts. The same ruling was made in *Moss* v. *Smith, supra*. We confess we are unable to discern how this ruling in any way helps the case of appellants. It may, however, indicate a procedure under which the creditors of a corporation may avail themselves in establishing their rights under the provisions of section 309 of the Civil Code prior to its amendment in 1929. But it cannot have any determining effect upon the action now before us.

"Our conclusion in this matter is that the plaintiffs have no right to maintain this action and that the trial court acted properly and legally in granting the motion of defendants for judgment on the pleadings."

In the original briefs filed in support of their motion to dismiss the appeal, it was apparently conceded by respondents that section 404 of the Civil Code was a general saving clause, the respondents relying upon the argument that the legislature in the 1929 amendment by deleting the specific saving clause from section 309 of the Civil Code had by affirmative action shown that it did not intend the general saving clause of section 404 of the Civil Code to apply to an action brought to enforce the liability of directors for the debts of the corporation created in excess of its subscribed capital stock theretofore imposed by section 309 of the Civil Code, but eliminated by the 1929 amendment. The court did not agree with this contention, being of the opinion that the clause saving pending causes of action was deleted from section 309 of the Civil Code, not for the purpose of retroactively cutting off pre-existing rights, but because, in view of the presence of section 404 in the code, its superfluity was recognized.

After the filing of our former opinion, *amici curiae* joined with respondents in petitioning the court for a rehearing upon this phase of the case, urging for the first time that section 404 of the Civil Code was not a general saving clause. It is argued, in this behalf, that the latter clause of section 404 is governed and controlled by the first clause which must be read in the conjunctive that "the legislature

may at any time amend, or repeal this part, or any title, chapter, article, or section thereof *and* dissolve all corporations created thereunder'' and that, therefore, *only* in the event of the dissolution of a corporation by legislative act does the latter provision of section 404 of the Civil Code operate to preserve existing rights and liabilities. As *amici curiae* read and understand section 404 of the Civil Code, its sole purpose and intent is to authorize the legislature to dissolve any California corporation by repealing or amending any part of the law relative to corporations and incidental to such dissolution to provide that an amendment or repeal which operates to dissolve a corporation will not operate to impair any remedy against the corporation or its officers for liabilities theretofore existing. In an attempt to prove that this is the correct interpretation, *amici curiae* have traced the legislative history of the enactment of section 404 of the Civil Code. It appears that section 404 of the Civil Code is identical in language with section 384 of the Civil Code, which latter section was repealed in 1907 for the reason that section 384 of the Civil Code was not in the proper place in the code and section 404 was. The Repealing Act contained a proviso that the rights acquired under section 384 should not be lost but continued in force under the provisions of section 404. It also appears that section 384 of the Civil Code is based upon section 31, article IV of the California state Constitution of 1849 (which section is preserved in somewhat different language in section 1 of article XII of the California Constitution of 1879), which read as follows: ''Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed.'' The code commissioners in a note to section 384 of the Civil Code, after quoting that provision of the Constitution, say, ''Under that provision of the tenth section of the first article of the Constitution of the United States which prohibits a state from enacting any law 'impairing the obligation of contracts' it has been settled that the charter of a private corporation is an executed contract between the government and the corporators, and that the legislature cannot repeal, impair, or alter it against the

474

consent or without the default of the corporation judicially ascertained and determined. (. . . *Dartmouth College* v. *Woodward,* 4 Wheat. (U. S.) 518 [4 L. Ed. 629] ; . . : ) In consequence of this construction, it has become usual for legislatures in acts of incorporation, either to make the duration of the charter conditional, or to reserve the power to alter, modify, or repeal the charter at pleasure; 'and as the power of modification and repeal is thus made a qualifying part of the grant of franchises, the exercise of that power cannot of course impair the obligation of the grant'. . . . Section 384 was inserted in this code out of an abundance of caution, and not because it was deemed necessary, for there can be but little doubt that the constitutional provision quoted at the head of this note enters into and becomes a part of the contract, thereby reserving to the legislature the right to repeal, impair, or alter any law relative to the formation of corporations, even though the result reached would be the dissolution of every corporation organized within the state.'' (Civ. Code, Ann., 1st ed., vol. 1, p. 121.) It is apparent from the foregoing discussion that the original purpose of section 384 of the Civil Code, and hence of section 404 of the Civil Code, which is identical in language, was to neutralize the effect of the Dartmouth college doctrine and to preserve in the legislature of the state the power to control all corporations by reserving to the legislature the power to alter, amend or repeal any law relative to corporations, ''even though the result reached would be the dissolution of every corporation organized within the state''.

Conceding this to be the purpose of the enactment of section 404 of the Civil Code, nevertheless we do not believe that section 404 is susceptible of the construction claimed for it by *amici curiae. Amici curiae* claim that rights and liabilities are preserved by the latter clause of section 404 only in the event of the dissolution of a corporation. If the first clause of section 404 is read in the conjunctive, it would follow that the power reserved to the legislature was to dissolve all corporations by amending or repealing any section of the code relative to corporations. It is obvious, we think, that the power reserved to the legislature need not go to the extent of dissolving a corporation, but that any

exercise of its power which falls short of that result is equally permissible. The power only to dissolve a corporation without the power to alter or modify its rights or liabilities, or to change the rules and regulations applicable thereto, would be a meager power, and fall far short of the complete control over corporations which concededly section 404 of the Civil Code was enacted to preserve to the state legislature.

If the first clause of section 404 of the Civil Code be read, as we think it must, to reserve to the legislature not only the power to dissolve any and all corporations in the state but to amend any part, title, chapter, article or section of the code relative to corporations regardless of whether such action does or does not result in dissolution, it follows logically that the latter part of section 404 is a general saving clause providing for the preservation of any remedy given against any corporation, its stockholders, or officers, for any liability which had been previously incurred, and which in the absence of such provision would be taken away or impaired by such amendment or repeal. In short, the latter clause of section 404 of the Civil Code is as broad in its scope as the first clause of section 404, and inasmuch as the first clause reserves plenary power to the legislature to amend or repeal any laws relative to corporations, the latter clause preserves all rights and liabilities affected by such amendment or repeal.

Under the decision of *People* v. *McNulty,* 93 Cal. 427 [26 Pac. 597, 29 Pac. 61], it was held that a general saving clause in the general body of the law is as effective as a special saving clause in the particular section. It is plain from the language of section 404 of the Civil Code that it is intended to apply to the amendment or repeal of any part of the Civil Code relative to corporations, and hence to the rights and liabilities arising under section 309 of the Civil Code.

The argument is reiterated upon rehearing that in the 1929 amendment the saving clause of section 309 was expressly omitted with the legislative intent of terminating all rights previously acquired but not carried to final judgment. As before noted, this court was of the opinion that the saving clause of section 309 was omitted because its

superfluity was apparent. Confirmation of our opinion is to be found in the comment of Henry Winthrop Ballantine in his book entitled, ''California Corporation Amendments (1929)'' upon section 309 of the Civil Code. Mr. Ballantine who served in the capacity of draftsman of the committee of The State Bar of California on revision of the corporation law and was instrumental in preparing the drafts of the amendments enacted by the legislature in 1929, commenting upon the 1929 amendment to section 309, says:

''The saving clause as to causes of action or liability now existing or actions now pending against directors was omitted. Under the decision of *Moss* v. *Smith*, 171 Cal. 777 [155 Pac. 90], and *Freeman* v. *Glenn County Tel. Co.,* 184 Cal. 508 [194 Pac. 705], it might seem that the amendment would operate to terminate the liability of directors for unlawful dividends even though they were declared and paid long prior to the amendment as well as liability for other violations of section 309, except in the cases covered by the amendment.

''The cases just cited, however, seem erroneous in that they overlook the general saving clause contained in section 404 which provides that an amendment or repeal of any section of the code does not take away or impair any remedy given against any corporation, its stockholders or officers for any liability which has been previously incurred. Under the decision of *People* v. *McNulty, supra,* it is held that a general saving clause like section 329 of the Political Code, in the general body of the law, is as effective as a special saving clause in the particular section. It would seem accordingly that the Supreme Court in the future, if its attention were called to this section, would follow the code rather than the prior decisions which overlooked the code section.''

As pointed out in our former opinion, special circumstances were present in both the case of *Moss* v. *Smith, supra,* and *Freeman* v. *Glenn County Tel. Co., supra,* which rendered section 404 of the Civil Code inapplicable to these actions. No such factors are present in the instant case.

We are, therefore, of the opinion that the motion to dismiss the appeal upon the ground that the amendment of 1929, which eliminated the liability on the part of directors

for the creation of debts in excess of subscribed capital stock, operated to abate all proceedings thereunder, was in the first instance properly denied.

The additional authorities furnished us by appellants, questioning the correctness of the conclusion that section 309 imposes a liability penal in its nature and hence unassignable, are of little value. The case of *Illinois State Bank* v. *Queen City Quarry Co.*, 203 Ill. App. 176, which is merely an abstract of a decision, and which holds that the liability of directors under an Illinois law similar to section 309 is that. of a surety, and the case of *Swan* v. *Burnham*, 70 N. Y. 580 [49 Atl. 93], which holds that "the effect of these enactments is to impose the liability of sureties for the corporation upon the directors, to the amount of such excess, *as a penalty* for the violation of these provisions" (italics ours) are cited as proof that the liability imposed by section 3409 is a contractual liability. These cases are from other jurisdictions and are not controlling, particularly in view of the fact that it is now settled beyond controversy by the case of *Moss* v. *Smith, supra,* and the later case of *Talcott Land Co.* v. *Hershiser,* 184 Cal. 748, 761, 763 [195 Pac. 653], that in California the liability imposed by section 309 of the Civil Code is penal in its nature. Moreover, it is to be noted that the case of *Swan* v. *Burnham, supra,* expressly states that the liability of a surety is imposed *as a penalty.* Thompson on Corporations, volume 2, third edition, section 1439, page 994, is also cited. An examination of this section and the preceding ones discloses the fact that the section quoted by appellants has reference to the minority view. The introduction to the section that "*some* courts have held and *some* able law writers have insisted . . . " clearly indicates this.

Appellants cite no cases in this jurisdiction directly holding said liability to be contractual—indeed, in view of *Moss* v. *Smith, supra,* and *Talcott Land Co.* v. *Hershiser, supra,* none could be cited. But appellants cite cases which hold the liability of directors under other statutes to be contractual, and argue that the liabilities involved in these cited cases are similar to the liability imposed by section 309 of the Civil Code, and thereby reach the conclusion that the liability imposed by section 309 of the Civil Code is con-

tractual, not penal. (*Winchester* v. *Howard*, 136 Cal. 432 [89 Am. St. Rep. 153, 64 Pac. 432, 69 Pac. 77]; *Brown* v. *Major*, 164 Fed. 673; *In re Post*, (N. Y.) 12 Fed. (2d) 941.) The two former cases deal with the liability of directors under section 3, article XII, of the Constitution for moneys embezzled or misappropriated by the officers of a corporation or joint-stock association. The New York case deals with a similar liability under the New York law for wrongful misapplication of funds by a director of a corporation. It is true that the state court in *Winchester* v. *Howard*, *supra*, and the federal court in *Brown* v. *Major*, *supra*, following the decision of *Winchester* v. *Howard*, held the liability imposed under that section and article of the Constitution to be contractual. However, evidently this same argument was advanced in *Moss* v. *Smith*, *supra*, and there disposed of, for the court there, after definitely holding the liability under section 309 of the Civil Code to be penal, for the reason that under section 309 there was no element of compensation for loss, said: "Nothing in *Winchester* v. *Howard*, 136 Cal. 441 [89 Am. St. Rep. 153, 64 Pac. 692, 69 Pac. 77] is in conflict with this; in the first place, because the directors, under section 3, article XII of the Constitution, which section was the foundation of the action, are liable solely for loss sustained by embezzlement and misappropriation—a liability involving loss and thus entirely different in character from that which appellants contend is imposed by section 309."

*In re La Jolla Lumber & Mill Co.*, 243 Fed. 1004, decided by the District Court, Southern District of California, holding that the liability of a director under 309 could only be enforced by a bill in equity is cited, apparently to present the point that the remedy being in equity was not a penalty for the reason that an equity court will not enforce forfeitures and penalties. This argument was likewise advanced and answered in the leading case of *Moss* v. *Smith*, *supra*, the court there saying: "The fact that the action may be treated in the nature of a creditors' bill brought on behalf of plaintiff creditor and all others, and that it thus addresses itself to the equitable side of the court, has not the slightest weight in determining the nature of the statute, and no more weight has the invocation of the familiar maxim that equity

abhors penalties and forfeitures. The question might have been of consequence in the older administration of jurisprudence where the courts of law and equity were wholly separated, but it ceases to be of consequence under our system, and even under the English system since its Reformed Judicature Act has come into effect. All redress and relief is administered in one forum and by one judicial officer. If, as chancellor, he revolts at enforcing a legal penalty, he will doff his chancellor's robe and lay aside his great seal, and donning the judicial ermine will enforce the penalty . . . , resuming the regalia of his chancellorship for the purpose of making equitable disposition of the fund.'' The case of *In re La Jolla Lumber & Mill Co., supra,* is similar in its holding to *Honot* v. *Henning,* discussed in our first opinion. So likewise is the case of *United States Farm L. Co.* v. *Bennett,* 55 Cal. App. 299 [203 Pac. 794], in which the Supreme Court in denying the petition for a hearing held that the decision of the District Court of Appeal could not be construed to mean that a single creditor could sue a director in a simple action for a money judgment, intimating that a bill in equity for the benefit of all the creditors was the proper remedy.

At first glance, some slight support is apparently afforded to appellants by the holding in *Southern Cal. Home Builders* v. *Young,* 45 Cal. App. 679 [188 Pac. 586]. This case involved the unlawful payment of dividends as prohibited under section 309 of the Civil Code. However, it appears upon examination that the holding was to the effect that even if section 309 be conceded to be remedial and damages must therefore be shown, that actual damages in the amount that the capital stock was depleted by unlawful dividends had been shown. The proposition that section 309 was remedial being, therefore, only a tentative assumption for the purpose of argument in that case, the decision therein is not actual authority to that effect.

Appellants point out that in the case of *United States Farm Land Co.* v. *Bennett, supra,* plaintiff secured judgment against defendant on account of goods alleged to have been delivered ''by plaintiff and its assignors'' and that in *Colcord et al.* v. *Granzow et al.,* 137 Okl. 194 [278 Pac. 654], it was held that the right to sue under section 5336 (similar

to section 309) passed to the assignees of notes held by certain creditors of a corporation prior to its dissolution as an incident to the debts. Appellants argue that if the assignees of creditors may sue, the assignees of the corporation should be entitled to sue. Nothing contained in our former opinion is at variance with the conclusion of these two cases that the assignment of a debt carries with it the right to enforce the statutory liability of a director imposed as a penalty. That question was not then and is not now before us, and we expressly refrain from expressing any opinion thereon. In the instant case, the alleged assignment to the trustees was not an assignment of a *debt* owing to the corporation which might, perhaps, carry with it as an incident thereof the right to enforce the statutory liability of the directors, but was an attempt to assign the *right to sue* the directors upon the statutory liability. Nothing contained in either of the cited cases has caused us to change our former opinion that the naked right to sue upon the statutory penalty is not assignable by the corporation.

An *amicus curiae* makes the further contention that a distinction has been made both by statute and decisions of courts between the liability imposed upon directors creating excessive corporate debts and those incurred by the directors in the commission of other acts enumerated in section 309 of the Civil Code resulting in the impairment of the capital stock of the corporation, such as declaring of dividends from sources other than surplus profits, and that while the action of the directors declaring dividends contrary to the provisions of this section of the code is expressly made a crime by a separate section of the Penal Code (sec. 560) and would, therefore, be void as to the corporation, no such drastic legislation is to be found against the action of directors creating excessive debts, but on the other hand, such debts, though created in violation of the statute, are binding upon the corporation. (*Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 300 [28 Pac. 1049].) It is true that the legislation in one instance is more extreme in its effect than it is in the other. That the legislature was of the opinion that the danger which might accrue to corporate property by reason of directors creating excessive debts was less real or serious than that which might arise from their acts in

impairing the capital stock of a corporation is apparent from the amendment to section 309 of the Civil Code in the year 1929, which in effect wholly abolishes the liability of directors for their future acts in creating excessive debts while the provisions of said section in other respects were practically left unchanged. As the code section now reads, as already stated, no action like the present one will lie either at the instance of the corporation, or of the creditors or stockholders. But the distinction which *amicus curiac* points out is not the distinction which marks the dividing line between a punitive statute and one that is not. A punitive statute is one which creates a forfeiture or imposes a penalty. ''What is meant by a statutory penalty was defined in *Los Angeles County* v. *Ballerino,* 99 Cal. 593 [32 Pac. 581, 34 Pac. 329], to be 'one which an individual is allowed to recover against a wrongdoer, as a satisfaction for wrong or injury suffered, and without reference to the actual damage sustained'.'' (*Moss* v. *Smith, supra,* p. 783.) This court in that same case held that the liability against directors for the violation of section 309 in creating excessive debts came within the above definition and could be enforced against the directors without reference to the loss sustained by the corporation as a result of the action of the directors in illegally creating debts in excess of the capital stock. This, therefore, must be held to be the deciding characteristic of a statutory penalty, and the feature which distinguishes it from a mere contractual liability. We are, therefore, unable to agree with *amicus curiae* in the above contention.

Judgment is affirmed.