[S. F. No. 16134. In Bank.—April 10, 1939.]

LOUIS AGUDO, Appellant, v. COUNTY OF MONTEREY, Respondent.

Alfred J. Hennessy for Appellant.

Long & Levit, as *Amici Curiae,* on Behalf of Appellant.

Anthony Brazil, District Attorney, for Respondent.

EDMONDS, J.—The appeal in this case presents for review a judgment in favor of the defendant county after its demurrer to the plaintiff's complaint was sustained without leave to amend. The only point in controversy is whether a cause of action based upon section 4452 of the Political Code, which provides that "Every county and municipal corporation is responsible for injury to real or personal property situate within its corporate limits, done or caused by mobs or riots," is assignable.

The plaintiff alleges in his complaint that in 1934 one Canete was a labor contractor hiring men to work in the fields, and that he boarded and maintained them in certain bunkhouses on his ranch in Monterey County; that on September 21, 1934, a mob of seventy-five persons armed with loaded guns and rifles applied gasoline to the buildings in which fifty-three of these laborers were living and destroyed personal property of a stated value belonging to each of them, without any negligence on their part and against their consent. He also alleges that within one year thereafter, each of the persons whose property was destroyed filed with the board of supervisors of the county a verified claim for its value and, after it was rejected, assigned his claim to the plaintiff.

The county successfully contended in the superior court and asserts upon this appeal that a cause of action for the value of property destroyed by a mob is not assignable. The plaintiff concedes that if the statute allows the recovery of a statutory penalty, the county's position is correct, but he claims that as the statute authorizes a property owner to re-

cover only actual damages it confers a compensatory or remedial right which is assignable. (See *Peterson* v. *Ball*, 211 Cal. 461 [296 Pac. 291, 74 A. L. R. 187]; *Western Mortgage & Guar. Co.* v. *Gray*, 215 Cal. 191 [8 Pac. (2d) 1016, 80 A. L. R. 866].) The nature of the statute is, therefore, determinative of the question for decision.

The statute upon which the plaintiff bases his cause of action was enacted in 1872 and is substantially the same as the enactments of other states which have provided a remedy for persons whose property has been destroyed by rioters. All of this legislation stems back to a series of English statutes of very ancient origin. The genesis of the principle involved has been traced to the Statute of Winchester enacted in 1285 (1 Stat. 13 Edw. I, p. 2, ch. 3), which provided that a person robbed might sue the inhabitants of the hundred or county in which the robbery had taken place. In ancient England, the individual inhabitants of each community were in theory responsible for the preservation of peace and order therein; hence it was considered just to impose civil liability upon them for damage to property resulting from criminal disorders which should not have been permitted. (See 25 Halsbury's Laws of England, 2d ed., 359.) The American statutes rest largely upon the same fundamental principle. Local subdivisions of government which have been invested with police power to maintain law and order are subjected to a correlative liability for injuries to property occasioned by rioters. (See *Louisiana* v. *Mayor etc. New Orleans*, 109 U. S. 285, 287 [3 Sup. Ct. 211, 27 L. Ed. 936].)

The prototype of the present American statutes is found in a section of the statute 1 Geo. I, St. 2, Ch. 5, commonly known as the "Riot Act". In the main the act was penal, making it a felony to engage in riots or public tumults, but one clause (section 6) created civil liability against the inhabitants of the hundred in which a riot had resulted in injury to private property. Liability was measured by the loss sustained, and consequently actions brought under this section of the act were held to be primarily remedial in spite of the fact that it was embodied in a statute which otherwise was entirely penal. For example, in the case of *Hyde* v. *Cogan*, 2 Doug. 699; 99 Eng. Rep. 445, the plaintiff brought an action against the inhabitants of the hundred of Ossulton to recover damages for his dwelling house and furnishings

which had been demolished in a riot. Section 6 of the Riot Act provided express indemnity for injury to dwelling houses but made no mention of furniture or chattels. It was held that the section, being remedial, should be liberally construed; hence plaintiff was entitled to damages for the loss of his personal property as well as his house.

In various American jurisdictions statutes based upon section 6 of the English Riot Act usually have provided for compensatory damages to the person whose property was injured or destroyed, and in construing them the courts have generally followed the English view that the sufferer's right to damages is remedial. (*County of Allegheny* v. *Gibson,* 90 Pa. St. 397 [35 Am. Rep. 670]; *Febock* v. *Jefferson County,* 219 Wis. 154 [262 N. W. 588]; *Yalcnezian* v. *Boston,* 238 Mass. 538 [131 N. E. 220]; *Barnes* v. *Chicago,* 255 Ill. App. 31; *Marshall* v. *City of Buffalo,* 50 App. Div. 149 [64 N. Y. Supp. 411].) Respondent cites *Underhill* v. *Manchester,* 45 N. H. 214, and *Champaign County* v. *Church,* 62 Ohio St. 318 [57 N. E. 50, 78 Am. St. Rep. 718, 48 L. R. A. 738], as holding that the right created by such statutes is essentially penal rather than remedial. The New Hampshire decision concerned the right to recover damages for a saloon illegally conducted by the plaintiff and which was destroyed by a mob. The court states that the statute of that state was "first and chiefly punitive", its purpose being "to prevent and suppress riots" and reasoned that "Riots being the chief mischief to be remedied, the statute is to be construed, if possible, so as to suppress the mischief. The business in which the plaintiff was engaged is a fruitful source of riots . . . and, to relieve persons so employed from risks incident to their calling would tend to foster riots rather than to prevent them." Thus it appears that the decision is in reality bottomed upon the doctrine of assumption of risk; one who incites a riot cannot claim the benefit of the statute. The Ohio case was decided under a statute which differs from the usual one in providing for damages in a sum certain regardless of the extent of the plaintiff's loss. In view of this fact the court's conclusion that the statute was "essentially penal and corrective" appears to be sound. The statement in the opinion to the effect that this would be so even though the particular statute provided for compensatory damages was unnecessary to the decision and upon principle does not seem correct.

In this state a statutory penalty has been frequently defined as "one which an individual is allowed to recover against a wrongdoer, as a satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained." (*Los Angeles County* v. *Ballerino,* 99 Cal. 593 [32 Pac. 581, 582, 34 Pac. 329].) Clearly, the damages provided for in section 4452 of the California Political Code are measured by the property loss which the injured party suffered. Moreover, this section and the companion provisions following it (sections 4453 to 4457, inclusive) are a reenactment of a statute originally adopted in 1868 entitled "An Act to provide for compensating parties whose property may be destroyed in consequence of mobs or riots." (Stats. 1867, 1868, p. 418, chap. 344.) It seems plain from the standpoint of both legislative intention and historical interpretation that the purpose of section 4452 was to provide a compensatory remedy to persons whose property has been injured or destroyed by mob violence. The rights created in the plaintiff's assignors by this section were, therefore, assignable.

Cases such as *Moss* v. *Smith,* 171 Cal. 777 [155 Pac. 90], *Peterson* v. *Ball,* 211 Cal. 461 [296 Pac. 291, 74 A. L. R. 187], and *Western Mortgage & Guar. Co.* v. *Gray,* 215 Cal. 191 [8 Pac. (2d) 1016, 80 A. L. R. 866], which construe former section 309 of the Civil Code as penal rather than remedial, are not at variance with this conclusion. The determination in these cases that the liability imposed upon participating directors of a corporation for debts created in excess of its subscribed capital stock was a statutory penalty necessarily followed a construction of the statute "making the directors liable for the full amount of the excess of the debts which they may have authorized, regardless of loss or damage which may have been occasioned by their acts". (*Moss* v. *Smith, supra,* p. 784.) In each of these cases it is clear that the court regarded the action as essentially punitive, because the damages were not based on actual loss, and they do not support defendant's contention that although the statute gives the property owner a remedial right, if it is punitive as far as the defendant county is concerned, the action is not assignable. The general distinction which this court made between a statutory penalty and a remedial right in the case of *County of Los Angeles* v. *Ballerino, supra,* is based upon sound legal principles. "Where the damages are given wholly to the

party injured as compensation for the wrong and injury, the statute having for its object more the indemnification of the plaintiff than the punishment of the defendant, the action is not penal, properly so called, but remedial." (1 Am. Jur. 89.)

The judgment is reversed and the trial court is directed to overrule the demurrer to the plaintiff's complaint.

Curtis, J., Shenk, J., Seawell, J., Waste, C. J., and Houser, J., concurred.