SUSAN J. MAYORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mayors v. Commissioner
Docket No. 8338-82.
United States Tax Court
T.C. Memo 1984-401; 1984 Tax Ct. Memo LEXIS 273; 48 T.C.M. (CCH) 680; T.C.M. (RIA) 84401; July 31, 1984. Nicholas DePento, for the petitioner. Miles D. Friedman, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION "KORNER, Judge: Respondent determined that *274 petitioner is liable as a transferee of Joseph A. Averna for deficiencies in income tax and additions to tax arising from Averna's 1977 and 1978 taxable years as follows: YEARS
DEFICIENCIES
ADDITIONS TO TAX
1977
$15,056.27
$2,329.54
1978
14,896.07
2,190.24
By amended answer, respondent altered the asserted transferee liability against petitioner to accord with his original assessments of liabilities as to Averna, and to give effect to certain credits against Averna's account arising from levies collected against Averna's income through August 3, 1982. Pursuant to these amendments, respondent alleges that on August 27, 1979, income taxes, additions thereto, and interest were assessed against Averna as follows: § 6651(a)(1) § 6651(a)
(2) § 6654
Year
Tax
Additions
Additions
Additions
Interest
Totals
1977
$14,882.76
$3,720.69
$892.96
$532.22
$1,219.98
$21,248.61
1978
14,138.00
70.69
393.00
294.38
14,896.07
After giving credit for amounts collected on Averna's account through August 3, 1982, respondent now contends that petitioner is liable as a transferee of Averna in the total amount *275 of $25,803.54, plus interest and additions occurring after August 3, 1982, computed as follows: § 6651(a)(1) § 6651(a)
(2) § 6654
Year
Tax
Additions
Additions
Additions
Interest
Totals
1977
$4,541.62
$3,720.69
$892.96
$532.22
$1,219.98
$10,907.47
1978
14,138.00
70.69
393.00
294.38
14,896.07
$25,803.54
Petitioner agrees that respondent's deficiency determinations, as reflected in his amended answer, are correct. Moreover, petitioner does not dispute the method by which respondent has credited Averna's liability account through August 3, 1982. The principal issue for decision is whether and to what extent petitioner is liable as a transferee of assets under section 6901(a)[1] as a result of her receipt in 1979 of certain real property which was, prior to the transfer, owned by Joseph A. Averna. FINDINGS OF FACT Some of the facts have been stipulated *276 and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Susan J. Mayors (hereinafter "petitioner") resided in Spring Valley, California, at the time she filed her petition in this case. I. Petitioner's Relationship With Dr. Averna.
During all years relevant herein, Dr. Joseph Averna was a licensed podiatrist. Petitioner first met Dr. Averna in 1971 and began working for him as a secretary and receptionist in his podiatry practice. Later in 1971 petitioner and Dr. Averna became emotionally involved and began living together in an adults only apartment complex. They were never married. In June 1973, a daughter, Antoinette, was born to petitioner and Dr. Averna. In anticipation of the birth of Antoinette, Dr. Averna, on February 12, 1973, purchased a residence at 1970 Avon Lane, Spring Valley, California, (hereinafter "the Avon Lane residence") for a total purchase price of $32,500. Title to this property was conveyed by grant deed to "Joseph Anthony Averna, a single man." After the birth of Antoinette, petitioner, Dr. Averna and their daughter moved into the Avon Lane residence and lived there *277 together continuously through November 1978. In December 1978, a rupture in the relationship between Dr. Averna and petitioner occurred and Dr. Averna left the Avon Lane residence and went to live with his parents. This separation was permanent. During the time petitioner and Dr. Averna were living together, petitioner worked in Dr. Averna's podiatry practice as a secretary, bookkeeper and X-ray technician. [2] Petitioner received a salary for her work in the podiatry practice. Additionally, petitioner kept house and cared for Antoinette while she and Dr. Averna were living together. Dr. Averna gave petitioner funds for basic living expenses during the period of their cohabitation as the need arose. While living together, petitioner and Dr. Averna retained their own surnames, and maintained separate checking accounts. Additionally, during this period, petitioner applied for and received an automobile loan in her own name. Dr. Averna made all payments on the Avon Laner residence during the period of his cohabitation with petitioner. *278 II. Transfer of the Avon Lane Residence.
In December 1978, when petitioner and Dr. Averna decided to separate, they reached an understanding, through petitioner's attorney, that Dr. Averna would transfer the Avon Lane residence to petitioner in consideration for past services rendered by petitioner to Dr. Averna. Additionally, Dr. Averna orally agreed to pay $500 per month to petitioner for support of Antoinette. This agreement was never reduced to an executed contract by petitioner and Dr. Averna. Nevertheless, pursuant to the oral understanding, Dr. Averna, on February 20, 1979, by quit claim deed, transferred the Avon Lane residence to petitioner. At the time of this transfer, the Avon Lane residence was encumbered by a deed of trust with a remaining balance of $51,450. [3] The transfer was made to petitioner subject to the underlying deed of trust encumbrance, and it was intended by the parties that petitioner would thereafter assume responsibility for payment on the deed of trust. No other monetary consideration was given to Dr. Averna in consideration for this transfer. *279 Although the parties had orally agreed that, subsequent to the transfer of the Avon Lane residence, petitioner would be responsible for making monthly payments on the deed of trust attached thereto, during the three months following the transfer, Dr. Averna made such payments. These payments were made by Dr. Averna in lieu of the child support he had agreed to provide, and were paid in the following amounts on the following dates: Amount
Date
$907.36
3/11/79
453.68
4/--/79
453.68
5/07/79
453.68
5/29/79
After May 1979, Dr. Averna ceased making payments on the deed of trust and petitioner thereafter made all payments thereon. In addition to the above deed of trust payments, Dr. Averna made the following payments to petitioner during 1979: Amount
Date
$114
2/26/79
85
3/26/79
100
5/02/79
400
6/21/79
No other payments were made by Dr. Averna to petitioner after their separation. III. Dr. Averna's Financial Status on February 20, 1979.
When Dr. Averna transferred the Avon Lane residence to petitioner on February 20, 1979, he owned only one other parcel of real property. This latter parcel was located at 132 - 25th Street, *280 San Diego, California (hereinafter "the 25th Street property"), and was used by Dr. Averna as his medical office. This property was purchased by Dr. Averna in February 1969, together with an adjacent piece of property, and the total price paid for the two parcels was $30,000. [4]
The 25th Street property is an old, single story structure located in the Lincoln Park section of southeast San Diego. This section of San Diego is a low income, high crime area. In late 1978 or early 1979, Dr. Averna attempted to refinance the 25th Street property through the Small Business Administration and the Southeast San Diego Branch of the Bank of America. These refinancing attempts were unsuccessful. In February and March 1979, Dr. Averna listed the 25th Street property for sale for $65,000 and $72,000, respectively. No purchase offers were received as a result of these listings. On July 17, 1979, Dr. Averna sold the 25th Street property to Mr. Jack Mallory for total consideration of *281 $18,000. Mr. Mallory was Dr. Averna's accountant. The total $18,000 purchase price was comprised of Mr. Mallory's assumption of a deed of trust, his payment of two State tax liens, and cash. The $18,000 purchase price paid by Mr. Mallory constituted, to some undisclosed degree, a bargain purchase. [5]
The 25th Street property changed hands twice after the sale by Dr. Averna to Mr. Mallory. On July 21, 1981, Mr. Mallory sold this property to Dr. L. J. and Marsha Jamison for $38,000. Dr. Jamison was not acquainted with Mr. Mallory when he and his wife purchased the 25th Street property. Dr. Jamison had been an investor in real estate since 1961 and felt that he purchased the property at a fair price. This purchase *282 was at arms length. In September 1982, Dr. and Mrs. Jamison sold the 25th Street property to Dr. Albert Richardson for a total purchase price of $65,000. Dr. Richardson is a dentist and practices in an office located adjacent to the 25th Street property. The value of the 25th Street property did not exceed $38,000 on February 20, 1979. As of December 31, 1978, Dr. Averna owned personal property which he used in his medical practice, as follows: Date
Purchase
Depreciation claimed
Adjusted
Description
Purchased
Price
through 12/31/78
Basis
Furniture
7/23
$565
$565
$ 0
Hot Water Tank
12/73
135
114
21
Furniture
1/70
100
100
0
X-Ray Machine
3/71
625
567
58
Carpets
12/71
735
693
42
Office Equipment
-/74
159
159
0
Office Equipment
10/75
475
386
89
Furniture
8/72
306
302
4
Medical Equipment
6/68
250
250
0
Total
$3,350
$3,136
$214
Dr. Averna did not purchase any additional personal property for use in his medical practice between October 31, 1978, and February 20, 1979. On February 20, 1979, Dr. Averna maintained one savings account and one checking account. The balances in these accounts *283 were $649.16 and $1,286.80, respectively, as of that date. These combined amounts constituted all of Dr. Averna's cash as of February 20, 1979. On February 20, 1979, Dr. Averna was liable on a deed of trust on the 25th Street property in the amount of $8,690, and remained personally liable on the note that he signed when he refinanced the Avon Lane residence, (see footnote 3, supra). The remaining balance on this latter note as of February 20, 1979, was $51,450. [6] Additionally, on that date Dr. Averna was liable for unpaid Federal income taxes, additions thereto and interest thereon from his 1977 tax year in the total amount of $20,040.86, [7] and unpaid Federal income taxes from his 1978 tax year in the amount of $14,138, plus employment taxes from the third quarter of 1978 of $532.81. Moreover, on February 20, 1979, Dr. Averna had outstanding liabilities for unpaid California State income taxes for years prior to 1978 of $4,157.22, and for 1978, of $3,418. Dr. Averna's 1979 Federal income tax liability was $7,350. It has not been demonstrated on this record that Dr. Averna was liable for any other amounts as of February 20, 1979. [8]
*284 Thus, as of February 20, 1979, after Dr. Averna transferred the Avon Lane residence to petitioner, Dr. Averna had assets and liabilities as follows: Assets
Value
25th Street property
$38,000.00
(or less)
Personal property in medical office
214.00
Savings account
649.16
Checking account
1,286.80
Total Assets
$40,149.96
Liabilities
Amount
Personal liability on note for refinancing
of the Avon Lane residence
$ 51,450.00
Deed of Trust on 25th Street property
8,690.00
1977 Federal income tax liabilities
inclusive of additions and interest
20,040.86
1978 Federal income tax liabilities
14,138.00
1979 Federal income tax liabilities
7,350.00
3rd quarter 1978 Federal employment tax
532.81
Pre-1978 State income tax
4,157.22
1978 State income tax
3,418.00
Total Liabilities
$109,776.89
IV. The Value of the Avon Lane Residence.
The Avon Lane residence is situated on a .61 acre lot in Spring Valley, California, and the home is 1,733 square feet in size. The residence is located in a middle income, suburban neighborhood, which is zoned residential, and is approximately 15 miles from downtown San Diego, California. It is *285 situated on the top of a 1,000 foot hill and the view is panoramic. Although the Avon Lane residence has a built-in swimming pool on the property, as of February 20, 1979, the pool was drained and in need of repair. Additionally, as of February 20, 1979, the Avon Lane residence had experienced flooding problems during periods of heavy rains, had a leaky roof, and was not connected to public sewer lines. The highest and best use of the Avon Lane residence is for residential purposes. Respondent employed Arthur Gee, a qualified expert real estate appraiser, for purposes of estimating the fair market value of the Avon Lane residence. Mr. Gee appraised the residence at a value of $98,800 as of February 20, 1979. In reaching his valuation conclusion, Mr. Gee utilized the comparable market value approach, which is an appraisal procedure whereby the fair market value of a specific piece of property is estimated by analyzing actual sales of similar property. Mr. Gee did not examine the interior of the 1970 Avon Lane residence prior to reaching his valuation figure. After making an initial review of numerous property sales in the general vicinity of the Avon Lane residence, Mr. Gee *286 selected four sales which he considered to be most comparable to the Avon Lane residence and adjusted the prices of the four sales (hereinafter referred to as "comparables") for certain variables in arriving at his appraisal. The first comparable Mr. Gee utilized is located in Spring Valley, California, and was sold on March 8, 1978, for $85,909. The lot size is .96 acre, the house itself is 1,917 square feet, and has a detached 2-car garage. The second comparable selected by Mr. Gee is located in Spring Valley, California, and was sold on December 8, 1978, at a sales price of $91,000. The house is 1,425 square feet, is connected to public sewer lines, and has a detached 2-car garage. The third comparable selected by Mr. Gee is located in Spring Valley, California, and was sold on August 22, 1979, for $83,500. The lot is 1.30 acres and the improvements on the lot consist of a main house and a guest house. The main house is approximately 2,100 square feet and the guest house is approximately 400 square feet. The fourth comparable selected by Mr. Gee is located in Spring Valley, California, and was sold on July 20, 1979, for $93,000. The house is 1,800 square feet, and is *287 situated on a lot of 10,454 square feet. This property has a 2-car detached garage. On February 20, 1980, the fair market value of the Avon Lane residence was $90,000. OPINION Respondent has determined that, pursuant to section 6901, petitioner is liable for Dr. Averna's unpaid 1977 and 1978 Federal tax liabilities, additions thereto and interest thereon, because of Dr. Averna's transfers of property to her during 1979. Section 6901 provides, in relevant part, as follows: (a) Method of Collection. -- The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) Income, Estate, and Gift Taxes.-- (A) Transferees.--The liability, at law or in equity, of a transferee of property-- (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes), * * * Section 6901 does not create transferee liability but merely provides a procedure *288 for respondent to collect an existing liability of the transferor. Segura v. Commissioner,77 T.C. 734, 742 (1981). Simply stated, respondent has only the substantive rights against a transferee that other creditors have. John Ownbey Co. v. Commissioner,645 F.2d 540, 543 (6th Cir. 1981), revg. a Memorandum Opinion of this Court; Segura v. Commissioner,supra at 742. Whether a transferee of property is liable for the unpaid tax liability of the transferor is to be determined under State law. Commissioner v. Stern,357 U.S. 39 (1958); Scott v. Commissioner,70 T.C. 71, 79 (1978). Since the transfers at issue in this case took place in California, California law governs the transferee liability issue. John Ownbey Co. v. Commissioner,supra at 543; Adams v. Commissioner,70 T.C. 373, 390 (1978), affd. in an unpublished opinion, 688 F.2d 815 (2d Cir. 1982). *289 Respondent bears the burden of proving petitioner's liability as a transferee. Section 6902; Rule 142(d). California has adopted the Uniform Fraudulent Conveyance Act, Cal. Civ. Code § 3439 et seq. (West 1970). Respondent contends that Dr. Averna's transfers to petitioner during 1979 were fraudulent under the constructive fraud test [9] of the California statute. In order to establish that the conveyances at issue were fraudulent under the constructive fraud test of the California statute, it must appear: (1) That respondent was a creditor of Dr. Averna on the transfer dates; (2) that the transfers of property were made to petitioner by Dr. Averna when Dr. Averna was insolvent or that Dr. Averna was rendered insolvent by virtue of the transfers; and (3) that the transfers were made without fair consideration. Cal.Civ. Code § 3439.04. [10] See also TWM Homes, Inc. v. Atherwood Realty & Inv. Co.,29 Cal. Rptr. 887, 896 (1963). *290 There is no dispute in this case that Dr. Averna, by quit claim deed, transferred to petitioner on February 20, 1979, any interest he possessed in the Avon Lane residence as of that date. Additionally, it is agreed that Dr. Averna made payments on the note secured by the deed of trust on the Avon Lane residence during March, April and May 1979, totaling $2,298.40, and that Dr. Averna transferred cash to petitioner during 1979 in the total amount of $699. Moreover, the parties agree that respondent was a creditor of Dr. Averna on the date of the transfers at issue herein. Petitioner has conceded that respondent's determinations of Dr. Averna's 1977 and 1978 tax liability, as asserted in respondent's amended answer, are correct. Petitioner contends, however, that Dr. Averna was *291 solvent on the date of the transfers and was not rendered insolvent as a result thereof. Additionally, petitioner argues that, in any event, the transfers at issue herein were supported by fair consideration. Accordingly, petitioner argues that she is not liable as a transferee of Dr. Averna for his outstanding Federal tax liabilities from 1977 and 1978. We shall first consider Dr. Averna's alleged solvency as of the date of the transfers. I. Solvency.
As indicated in our findings, the property transfers at issue herein occurred between February 20, 1979, and June 21, 1979, beginning with the quit claim conveyance of the Avon Lane residence on February 20, 1979. Since the ultimate issue involved herein will be fully resolved by our conclusions regarding the transfer of the Avon Lane residence, infra, we need not and do not further consider the other transfers placed in issue by respondent, so far as they affect the solvency question. Under the Uniform Fraudulent Conveyance Act as adopted by California, a person is considered to be insolvent when a sale of his assets would not realize sufficient cash to satisfy his existing debts. Thus *292 Cal. Civ. Code § 3439.02(a) (West 1970) provides: A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. See also TWM Homes, Inc. v. Atherwood Realty & Inv. Co.,supra.
For these purposes, "debt" is defined as "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Cal. Civ. Code § 3439.01 (West 1970). Thus, in determining whether a taxpayer is insolvent on the date of his transfer of property, or rendered insolvent by virtue of the transfer, the unpaid income tax liability of the transferor for the year of transfer and prior years must be taken into account, notwithstanding that such liability was unassessed at the time of transfer and its existence was unknown at that time. Kreps v. Commissioner,42 T.C. 660, 670 (1964), affd. 351 F.2d 1 (2d Cir. 1965); Coca-Cola Bottling Co. of Tucson v. Commissioner,37 T.C. 1006 (1962), affd. 334 F.2d 875 (9th Cir. 1964); *293 Quirk v. Commissioner,15 T.C. 709 (1950), affd. per curiam, 196 F.2d 1022 (5th Cir. 1952). Dr. Averna's probable liability as of February 20, 1979, including the remaining balance on the deed of trust on the 25th Street property, his personal liability on the note he signed when he refinanced the Avon Lane residence, his outstanding state tax liabilities and his Federal tax liabilities from 1977, 1978 and 1979, was therefore $109,776.89, as detailed in our findings herein. The total value of Dr. Averna's personal property and cash as of that date was $2,149.96. Dr. Averna's only other asset of significant value as of February 20, 1979, was the 25th Street property. [11] Petitioner argues that the fair salable value of the 25th Street property on February 20, 1979, was more than sufficient to offset the above-listed liabilities and therefore contends that Dr. Averna was solvent on the transfer date within the intendment of Cal. Civ. Code § 3439.02(a). In order for petitioner to be correct in this contention, the fair salable value of the 25th Street property must have been at least $107,626.93 as of February 20, 1979. Respondent contends that the *294 value of the 25th Street propety as of February 20, 1979, did not exceed $20,000. We think it clear on this record that the fair salable value of the 25th Street property as of February 20, 1979, could not have exceeded $38,000. The record in this case discloses four purchases of the property. Dr. Averna first purchased the property in 1969, along with another parcel, for $30,000. In July 1980, Dr. Averna sold the 25th Street property to Mr. Mallory for $18,000. Two years later in July 1981, Mr. Mallory sold the property to Dr. Jamison for $38,000. Finally, in September 1982, Dr. Jamison sold the property to Dr. Richardson for $65,000. Although the sale by Dr. *295 Averna to Mr. Mallory for $18,000 may have had some element of a bargain purchase, it is clear that the sale by Mr. Mallory to Dr. Jamison for $38,000 was at arms length. Mr. Mallory was unacquainted with Dr. Jamison at the time the property was sold, and Dr. Jamison, an experienced real estate investor, testified that he believed he paid a fair price for the property. Moreover, although Mr. Mallory had listed the 25th Street property in prior years for amounts in excess of his $38,000 sales price, he never received any purchase offers in excess of $38,000 and specifically testified that he believed he received a fair price for the property. Additionally, in light of Dr. Jamison's sale of the 25th Street property in 1982 for $65,000, there is every indication in this record that the value of the property had steadily appreciated since February 20, 1979. The arms length sale price received by Mr. Mallory in July 1981, therefore could not represent an underestimation of the fair salable value of the property as of February 20, 1979. If anything, this $38,000 price constituted the fair salable value of the 25th Street property as of February 20, 1979, plus an element of appreciation *296 realized through July 1981. Even if we assume (as we have for purposes of this case) that this $38,000 sales price accurately reflected the fair value of the 25th Street property as of February 20, 1979, such amount would be insufficient to render Dr. Averna solvent as of that date under Cal. Civ. Code § 3439.02(a); the total fair salable value of Dr. Averna's assets would have been only $40,149.96. Since Dr. Averna had unpaid liabilities of $109,776.89 at that time, the fair salable value of his property was insufficient to pay his probable liability on his existing debts, and he was therefore insolvent within the intendment of California law. II. Fair Consideration.
Petitioner's primary position in this case is that the transfer of the Avon Lane residence was supported by fair consideration. More precisely, petitioner contends that, during the period of her cohabitation with Dr. Averna, she rendered services to Dr. Averna, both as a homemaker and in his podiatry practice, for which she was not adequately compensated, and that these services were rendered with the expectation of monetary reward. Petitioner further contends that, under the California case of Marvin v. Marvin,18 Cal. 3d 660, 134 Cal. Rptr. 815 (1976), *297 petitioner possessed certain property rights against Dr. Averna by virtue of her alleged rendition of uncompensated services, and that the transfer of the Avon Lane residence was made pursuant to an oral property settlement agreement wherein petitioner agreed to relinquish all of her alleged property rights against Dr. Averna in consideration for the transfer. [12] Petitioner submits that her relinquishment of these alleged property rights constituted fair consideration within the intendment of the Uniform Fraudulent Conveyance Act as a matter of law. At a minimum, petitioner argues that respondent has failed to sustain what petitioner describes as his burden of proving that the relinquishment by petitioner of her alleged property rights was less than fair consideration. *298 Respondent argues that, in the context of this case, the burden of demonstrating that fair consideration supported the transfer of the Avon Lane residence rests with petitioner. Moreover, respondent maintains that the record in this case does not support a conclusion that petitioner's alleged relinquishment of any property rights she may have possessed against Dr. Averna, upon the termination of their relationship, constituted fair consideration within the intendment of the Uniform Fraudulent Conveyance Act. As a threshold matter, we must reject petitioner's contention that respondent must prove that petitioner's relinquishment of her alleged property rights did not constitute fair consideration. Under California law, where the evidence discloses that the transfer at issue was made when the transferor was insolvent, or that the transferor was rendered insolvent by virtue of the transfer, a prima facie case of fraudulent conveyance is established, and the burden of demonstrating that the transfer was supported by fair consideration then rests with the transferee. Kirkland v. Risso,98 Cal. App. 3d 971, 977-978, 159 Cal. Rptr. 798, 801-802 (1979); *299 cf. Gobins v. Commissioner,18 T.C. 1159, 1168 (1952), affd. per curiam, 217 F.2d 952 (9th Cir. 1954); Hutton v. Commissioner,59 F.2d 66, 69 (9th Cir. 1932), affg. 21 B.T.A. 101 (1930). Since we have already found that the transfer of the Avon Lane residence rendered Dr. Averna insolvent, the burden of demonstrating that the transfer was supported by fair consideration therefore rests with petitioner. Kirkland v. Risso,supra.
"Fair consideration" is defined by the California statute as the exchange of property or the satisfaction of an antecedent debt which is the "fair equivalent" of the property transferred. Cal. Civ. Code § 3439.03. [13] Thus, in California, "[i]t is well-settled . . . that the extinguishment of . . . a preexisting debt constitutes a valuable consideration for the sale or assignment of property." [Citation omitted.] United States Fidelity & Guaranty Co. v. Postel,149 P.2d 183, 185 (1944). However, it is equally well-settled in California that what consitutes *300 fair consideration for these purposes must be determined from the standpoint of the creditors, Hansen v. Cramer,39 Cal. 2d 321, 245 P.2d 1059 (1952). Thus, in order to show that the transfer of the Avon Lane residence was suported by fair consideration, petitioner must demonstrate that, upon her separation from Dr. Averna, she possessed certain defined property rights against him which were, in economic terms, the "fair equivalent" in value of the equity in the Avon Lane residence on the transfer date (i.e., $38,550). [14] Petitioner must additionally show that any property rights she possessed *301 against Dr. Averna were completely relinquished in consideration for the transfer. Since we conclude below that petitioner has failed to demonstrate on this record that she possessed any enforceable property rights against Dr. Averna by virtue of her alleged rendition of uncompensated services, we find that the transfer was unsupported by fair consideration within the intendment of Cal. Civ. Code § 3439.03. As stated supra, petitioner in this case contends that the property rights she allegedly relinquished in consideration for the transfer of the Avon Lane residence, were founded upon her rendition of services to Dr. Averna in her capacity as a homemaker and in his podiatry practice, for which she was uncompensated. Petitioner argues that her rendition of uncompensated services would constitute a ground for her recovery against Dr. Averna under California law, and contends that Dr. Averna's transfer of the Avon Lane residence to her was in satisfaction of his obligation to reimburse petitioner for said services. Petitioner *302 thus effectively argues that the transfer at issue herein was in satisfaction of a preexisting obligation and was therefore supported by fair consideration. As a starting point, there is no doubt that, under California law, one party to a nonmarital relationship may recover from the other party to the relationship for the reasonable value of services rendered less the reasonable value of support received, if it can be shown that the services were rendered with an expectation of monetary reward. Marvin v. Marvin,supra at 18 Cal. 3d 684. Moreover, the California courts have now done away with the notion that services rendered by one nonmarital partner to another are presumptively contributed as gifts, in favor of a presumption that nonmarital parties intend to deal fairly with each other. Marvin v. Marvin,supra at 18 Cal. 3d 683. Accordingly, we would be willing to assume that any uncompensated services rendered by petitioner to Dr. Averna were rendered with the expectation of compensation. However, although it *303 is clear on this record that petitioner, during the period of her relationship with Dr. Averna, rendered household services for the benefit of Dr. Averna and worked in his meidical office as a secretary and X-ray technician, petitioner has provided no estimate of the value of the services rendered. Nor has petitioner attempted to demonstrate the amount of time she devoted to these activities, and it would therefore be impossible for us to arrive at our own estimate. Moreover, even if we were able to place a value on the services performed, we would be unable on this record to determine the extent to which such services were uncompensated during the term of petitioner's relationship with Dr. Averna. Although petitioner testified generally that the salary Dr. Averna paid her for her work in his podiatry practice was small, she also acknowledged that a salary was paid, and that these amounts were sufficient to satisfy her basic living needs. She further testified that Dr. Averna was a good provider during the period of cohabitation and that if she needed money he would give it to her. It is thus apparent that the services petitioner performed in Dr. Averna's podiatry practice were, *304 at least to some degree, compensated prior to the termination of their relationship. It is equally apparent that at least a portion of the household services performed by petitioner was compensated for in the form of support provided by Dr. Averna during the term of the relationship. Without any evidence on this record which would allow us to estimate the value of the services petitioner rendered to Dr. Averna with any reasonable degree of accuracy, or from which we could determine the extent to which the services remained uncompensated at the termination of the relationship, we would not be justified in ascribing any value to Dr. Averna's alleged obligation to reimburse petitioner for the reasonable value of her uncompensated services. Cf. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930); Alonso v. Commissioner,78 T.C. 577, 583-584 (1982). We must therefore conclude that petitioner has failed to establish that she possessed any enforceable rights in Dr. Averna's property upon the termination of their relationship. Accordingly, petitioner's relinquishment of these alleged rights could not constitute fair consideration within the intendment *305 of Cal. Civ. Code § 3439.03. Since petitioner has not demonstrated on this record that Dr. Averna was obligated to her under the principles relating to nonmarital partners as ennunciated in Marvin v. Marvin,supra, she has failed to sustain her burden of proving that any obligation whatsoever was discharged by virtue of the transfer, and we must accordingly hold that the transfer was not supported by fair consideration. Accordingly, we hold that petitioner is liable as a transferee of Dr. Averna. III. The Extent of Petitioner's Liability
Petitioner's liability as a transferee of Dr. Averna is limited to the lesser amount of Dr. Averna's outstanding Federal income tax liability, including additions thereto and interest as determined under Federal law, or the value on the transfer date of the assets transferred, together with any interest in respect of such assets as provided by State law. Mysse v. Commissioner,57 T.C. 680, 703 (1972); Lowy v. Commissioner,35 T.C. 393 (1960). Dr. Averna's outstanding Federal tax liability, for his 1977 and 1978 tax years including additions thereto and interest thereon, was $25,803.54, *306 as of August 3, 1982, after giving credit for levies made against him through that date. Subsequent to August 3, 1982, the record reflects that additional levies were made against Dr. Averna totalling $3,238.47, and these additional levies have not been credited against petitioner's asserted transferee liability. These amounts, which have been collected but not credited against petitioner's asserted liability, must be so credited, and will reduce the amount collectible against her pro tanto. See Estate of Stein v. Commissioner,40 T.C. 275 (1963); Quirk v. Commissioner,15 T.C. 709 (1950), affd. per curiam 196 F.2d 1022 (5th Cir. 1952); Yagoda v. Commissioner,39 T.C. 170 (1962), affd. 331 F.2d 485 (2d Cir. 1964), cert. denied 379 U.S. 842. Such amounts, plus all later collections from Dr. Averna, are to be credited against petitioner's ultimate liability in the Rule 155 computation herein. Accordingly, Dr. Averna's outstanding tax liability, for which petitioner may be held liable as a transferee, cannot exceed $22,565.07 plus interest and additions occurring after August 3, 1982. *307 Respondent has argued that the value of the Avon Lane residence as of February 20, 1979, was $98,800, in accordance with the valuation figure adopted by his expert witness. It would serve no useful purpose to make a detailed analysis of the testimony and appraisal report of respondent's expert and set out, point by point, the extent to which we agree or disagree with his analysis. The valuation process is not a precise science, cf. Chesapeake & Ohio Ry. Co. v. Commissioner,64 T.C. 352, 391, 392 (1975), and is "capable of resolution only by Solomon-like pronoucement." Messing v. Commissioner,48 T.C. 502, 512 (1967). Suffice it to say we have carefully studied respondent's expert appraisal, and have found that the valuation figure reached therein to be somewhat excessive. The comparables used in this report were generally larger in size and appeared to be in better condition than the Avon Lane residence, and we do not think the sales prices of these comparables were adequately adjusted to reflect these variances. Accordingly, we have determined that the fair market value of the Avon Lane residence was $90,000 as of February 20, 1979. Our *308 conclusion on this valuation issue, however, will not operate in petitioner's favor in this case. As of February 20, 1979, the Avon Lane residence was encumbered by a deed of trust in the amount of $51,450. Thus, the total equity in the Avon Lane residence as of the transfer date was $38,550, and this represents the value of the residence transferred to petitioner by quit claim deed. Cf. Stokes v. Commissioner,22 T.C. 415, 428 (1954). Although the precise amount of Dr. Averna's outstanding tax liability, plus additions thereto and interest thereon, will have to await the Rule 155 computation herein, it is nevertheless clear that such amount will be fully covered by the $38,550 equity in the Avon Lane residence as of February 20, 1979. Accordingly, petitioner will be liable as transferee for the full amount of Dr. Averna's remaining tax liabilities, interest thereon and additions thereto. Lowy v. Commissioner,supra.
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure, unless otherwise specifically stated.↩
2. Petitioner became a state licensed X-ray technician while working in the podiatry practice by passing the required licensing courses.↩
3. The deed of trust was the only encumbrance on the Avon Lane property at the time of the transfer. The deed of trust resulted from Dr. Averna's refinancing the Avon Lane residence in June 1977, for the total amount of $52,000. In connection with this refinancing, Dr. Averna signed a note which rendered him personally liable for repayment of the $52,000.↩
4. It is not clearly disclosed in the record what percentage of the purchase price was allocable to the 25th Street property. Dr. Averna sold the parcel adjacent to the 25th Street property in 1978.↩
5. Both Mr. Mallory and Dr. Averna so testified. Dr. Averna was apparently willing to sell the 25th Street property at below its fair market value because petitioner, at the time of this sale, was threatening to sue him on his prior oral agreement to provide petitioner with $500 per month for child support, which he had not honored after May 1979. That is, the sale was motivated by Dr. Averna's desire to remove the 25th Street property from petitioner's reach.↩
6. Although petitioner had informally agreed to make payments on the deed of trust encumbering the Avon Lane residence after the transfer, this informal understanding could not operate to relieve Dr. Averna from his personal liability on the note. ↩
7. This total amount is comprised of $14,882.76 unpaid Federal income tax, additions to tax under sections 6651(a)(1) ($3,720.69), 6651(a)(2) ($148.82), and 6654 ($532.22), and interest through February 20, 1979 ($756.37). ↩
8. Respondent alleges that Dr. Averna had certain other outstanding debts on February 20, 1979. However, in support of this contention, respondent relies upon testimony of certain witnesses in this case which was at best equivocal and which does not support respondent's contentions. Additionally, respondent relies upon two collection and information statements executed by Dr. Averna on July 23, 1980, and May 25, 1982, respectively. On the July 23, 1980, statements, Dr. Averna represented that he had outstanding judgments of $7,000. On the May 25, 1982, statement, Dr. Averna listed liabilities of $8,000 to credit card companies. However, nothing in this record would clearly demonstrate that these liabilities existed as of February 20, 1979, and we accordingly do not include these amounts for purposes of resolving the issues presented in this case.↩
9. Respondent does not contend that the actual fraud test of the California statute is applicable herein. See Cal. Civ. Code § 3439.07↩ (West 1970).
10. Section 3439.04, Cal. Civ. Code provides: Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.↩
11. Although Dr. Averna was engaged in the practice of podiatry at the time of transfer of the Avon Lane residence, he testified that he spent the income from that practice as quickly as it was earned, and no amounts were available for the discharge of his liabilities. Moreover, by the end of 1979, Dr. Averna had closed his podiatry practice and did not sell the practice for value to any third party. Accordingly, we must conclude that as of February 20, 1979, the practice itself was without substantial value.↩
12. Petitioner cannot contend that she acquired community property rights by virtue of her nonmarital relationship with Dr. Averna. The California Supreme Court in Marvin v. Marvin,18 Cal. 3d 660, 681, 134 Cal. Rptr. 815, 829 (1976), specifically rejected the notion that nonmarital partners are entitled to an equal division of property accumulated during the term of their relationship, and overruled a decision that had so held. See In re Marriage of Cary,34 Cal. App. 3d 345, 109 Cal. Rptr. 862 (1973). Thus, cases concerning transfers of property in satisfaction of marital property rights are inapposite here. See, e.g. Britt v. Damson,334 F.2d 896 (9th Cir. 1964); In re Chappel,243 F. Supp. 417↩ (S.D. Cal. 1965).
13. Cal. Civ. Code § 3439.03provides: Fair consideration is given for property, or obligation: (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.↩
14. The fair market value of the Avon Lane residence ($90,000), minus the balance of the existing first deed of trust note ($51,450) equals $38,550.↩